DESIRE POWELL ET AL. *v.* INFINITY INSURANCE
COMPANY
(SC 17673)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued March 13—officially released May 29, 2007

*Christi M. Carrano*, for the appellants (plaintiffs).

*John W. Lemega*, with whom was *Regen O'Malley*, for the appellee (defendant).

*Opinion*

KATZ, J. The plaintiffs, Desire Powell and Clayton Keyworth, appeal from the trial court's grant of summary judgment in favor of the defendant, Infinity Insur-

ance Company, on the basis of the doctrine of res judicata. The plaintiffs' claims alleging bad faith, breach of contract and violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and the Connecticut Unfair Insurance Practices Act (CUIPA), General Statutes § 38a-815 et seq., arose out of an automobile accident and subsequent lawsuit that was litigated to conclusion between the same parties to this action. We conclude that the plaintiffs' claims in the present case are precluded because they grew out of the same transaction or nucleus of facts, entailed the presentation of the same evidence and involved infringement of the same rights as those implicated in the prior action. Accordingly, we affirm the judgment of the trial court.

The record discloses the following undisputed facts. In the initial action against the defendant commenced on March 29, 2001 (action I), Powell, as the owner-passenger, and Keyworth, as the driver, alleged that they had been involved in a motor vehicle accident on Route 9 in New Britain, which occurred when an unknown vehicle veered into their lane of travel thereby causing Keyworth to strike three other vehicles. In counts one and two of the complaint, Keyworth and Powell respectively asserted claims against the defendant for their injuries resulting from the accident pursuant to the uninsured motorist coverage of an automobile policy that the defendant had issued to Powell and that was in effect on the date of the accident. Under the policy, coverage was limited to $20,000 per person and $40,000 per accident, the statutory minimum uninsured motorist benefit. See General Statutes § 38a-336. The plaintiffs each filed offers of judgment in the amount of $20,000. Thereafter, the matter was tried to a jury, which reached a verdict on July 18, 2002, and awarded damages, in excess of the policy limits, of $361,800 to Powell ($4300 in economic damages and $357,500 in

noneconomic damages) and $378,985 to Keyworth ($3610 in economic damages and $375,375 in noneconomic damages). The court then reduced the awards by a 10 percent comparative negligence finding. Following the defendant's motion for remittitur, the trial court further reduced the awards for each plaintiff to $20,000, plus interest. The defendant then issued payments to each plaintiff in the amount of $24,292.31, as ordered by the court. Thereafter, the plaintiffs filed a satisfaction of judgment.

Approximately one year later, the plaintiffs commenced the present action against the defendant (action II). In a six count revised complaint, each plaintiff alleged one count of bad faith, breach of contract and a violation of CUTPA through CUIPA. Specifically, each count claiming bad faith described the circumstances of the February 18, 2000 accident, the nature and extent of their injuries and the coverage under Powell's uninsured motorist policy issued by the defendant. Additionally, each plaintiff alleged that he or she had sent a letter to the defendant with a demand to settle the claim, that the defendant had sent notice to each regarding the applicable policy limits of $20,000, and that, despite offers by each to settle for the policy limits, the defendant had refused to pay said sum "although the reasonable value of the plaintiff's losses far exceeded that amount." In addition, the bad faith counts recited the following: action I had been filed "as a result of the defendant's continued refusal to settle the claim within the policy limits"; despite the plaintiffs' offers of judgment in the amount of $20,000, the defendant had "refused to settle [their] claim[s] for a fair amount"; the defendant had refused to process diligently the plaintiffs' claims, had delayed processing their claims "[f]or a period of over three years before and throughout the trial process," and had undertaken an improper investigation of the plaintiffs; the defendant had hara-

ssed the plaintiffs to accept a lesser sum than was fair in order "to profit from [their] vulnerable position"; "the defendant ha[d] breached an implied covenant of good faith and fair dealing, contrary to [its] obligations to deal with [Powell], an insured, in a fair and reasonable manner"; and, the defendant had refused to settle for the full amount of the jury verdict.

In the third and fourth counts of the complaint, the plaintiffs each alleged that the defendant had violated CUTPA by violating CUIPA. These counts incorporated by reference all of the allegations in the bad faith counts and then further alleged that the defendant: had failed to acknowledge communication with respect to the claims arising under Powell's uninsured motorist policy; had not attempted in good faith to effectuate a settlement; had compelled the plaintiffs to institute litigation to recover amounts due under the insurance policy; and had failed to provide a reasonable explanation of the basis in the insurance policy in relation to applicable facts for its denial of the offer of settlement. Finally, each plaintiff alleged that the defendant's conduct indicated a general business practice of operating in this manner.

In counts five and six, the plaintiffs again incorporated by reference all of the allegations in their bad faith counts and alleged that the defendant had breached expressed or implied representations that it would investigate and process in good faith any claims submitted by the plaintiffs. Finally, each plaintiff alleged that the defendant had breached the insurance contract when it failed to pay the $20,000 demand of December 1, 2000, or, in the alternative, when it allowed the offer to settle within the policy limits to expire.

The defendant moved for summary judgment in the present action, claiming that: action II was barred by the doctrine of res judicata because the plaintiffs could

have asserted the causes of action in the present case in action I; its investigative conduct had been proper and in accordance with the terms and conditions of the insurance policy; and, by filing the satisfaction of judgment, the plaintiffs had waived their claims that the defendant's refusal to settle in accordance with the jury's verdict for full settlement of their claims constituted bad faith, breach of contract, or a violation of CUTPA/CUIPA.

Following the filing of memoranda of law and oral argument, the trial court granted the defendant's motion for summary judgment, concluding, inter alia, that the action was barred by res judicata.[1] The court rendered judgment in favor of the defendant, and this appeal followed.[2]

As a preliminary matter, we set forth the applicable standard of review and governing legal principles. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

[1] The trial court determined that, although the plaintiffs had not asserted claims of bad faith and violations of CUTPA/CIUPA in action I, they could have done so. The court held that the contract counts were barred because, although the plaintiffs had advanced a different theory in action II, "[t]he first lawsuit was an action in contract that went to judgment, and the judgment was satisfied by the defendant." The trial court noted that there was one aspect of the plaintiffs' complaint that must be addressed separately from the res judicata determination, namely, their allegation in each count that the defendant's failure to pay them their demand for the jury verdict constituted bad faith, and concluded that this claim failed as a matter of law under General Statutes § 38a-336 (b) because the defendant "was not required to pay more than its contractual liability." Thus, the court granted the defendant's motion for summary judgment as to all counts of the plaintiffs' complaint.

[2] The plaintiffs appealed from the trial court's judgment to the Appellate Court, and we thereafter transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing . . . that the party is . . . entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. . . . *Cantonbury Heights Condominium Assn., Inc.* v. *Local Land Development, LLC*, 273 Conn. 724, 733, 873 A.2d 898 (2005)." (Internal quotation marks omitted.) *Dark-Eyes* v. *Commissioner of Revenue Services*, 276 Conn. 559, 569–70, 887 A.2d 848, cert. denied, 549 U.S. 815, 127 S. Ct. 347, 166 L. Ed. 2d 26 (2006).

"The doctrine of res judicata holds that an existing final judgment rendered upon the merits without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. . . . If the same cause of action is again sued on, the judgment is a bar with respect to any claims relating to the cause of action which were actually made or which might have been made." (Citations omitted.) *Wade's Dairy, Inc.* v. *Fairfield*, 181 Conn. 556, 559–60, 436 A.2d 24 (1980). "Claim preclusion (res judicata) and issue preclusion (collateral estoppel) have been described as related ideas on a continuum. . . . *Dowling* v. *Finley Associates, Inc.*, 248 Conn. 364, 373, 727 A.2d 1245 (1999). More specifically, collateral estoppel, or issue preclusion . . . prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties or those in privity with them upon a different claim. *Cumberland Farms, Inc.* v. *Groton*, 262 Conn. 45, 58, 808 A.2d 1107 (2002); *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, 257 Conn. 456, 466, 778 A.2d 61 (2001). An issue is actually

litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . 1 Restatement (Second), Judgments § 27, comment (d) (1982). An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. F. James & G. Hazard, Civil Procedure (3d Ed. 1985) § 11.19. . . . *Dowling* v. *Finley Associates, Inc.*, supra, 374." (Internal quotation marks omitted.) *Efthimiou* v. *Smith*, 268 Conn. 499, 506–507, 846 A.2d 222 (2004).

The applicability of the doctrines of collateral estoppel or res judicata presents a question of law that we review de novo. See, e.g., *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, supra, 257 Conn. 466; *Linden Condominium Assn., Inc.* v. *McKenna*, 247 Conn. 575, 594, 726 A.2d 502 (1999). Because these doctrines are judicially created rules of reason that are "enforced on public policy grounds"; *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998*, 248 Conn. 108, 127, 728 A.2d 1063 (1999); we have observed that whether to apply either doctrine in any particular case "should be made based upon a consideration of the doctrine's underlying policies, namely, the interests of the defendant and of the courts in bringing litigation to a close . . . and the competing interest of the plaintiff in the vindication of a just claim. . . . These [underlying] purposes are generally identified as being (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation. . . . The judicial doctrines of res judicata and collateral estoppel are based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate. . . . Stability in judgments grants to parties and others the certainty in the management of their affairs

which results when a controversy is finally laid to rest."
(Citation omitted; internal quotation marks omitted.)
*Isaac* v. *Truck Service, Inc.*, 253 Conn. 416, 422–23, 752
A.2d 509 (2000).

We also have recognized, however, that the application of either doctrine has dramatic consequences for the party against whom it is applied, and that we "should be careful that the effect of the doctrine does not work an injustice." *Gladysz* v. *Planning & Zoning Commission*, 256 Conn. 249, 261, 773 A.2d 300 (2001). Thus, "[t]he doctrines of preclusion . . . should be flexible and must give way when their mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies." (Internal quotation marks omitted.) *Isaac* v. *Truck Service, Inc.*, supra, 253 Conn. 423. "Accordingly, on occasion, we have recognized exceptions to the general policy favoring application of the doctrines of res judicata and collateral estoppel. See, e.g., [id.], 422, 429 (preclusion doctrines do not bar relitigation of property damage claim, which initially was litigated in small claims court, in subsequent personal injury action pending on regular civil docket even though both small claims and personal injury actions were predicated on same events); *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998*, supra, 248 Conn. 124–25 (second arbitration panel need not give preclusive effect to issues decided by first arbitration panel even when decisions of both panels involve same parties and interpretation of same contract provision); *State* v. *McDowell*, 242 Conn. 648, 654, 657, 699 A.2d 987 (1997) (doctrine of collateral estoppel does not bar state from bringing defendant to trial on criminal charges even though state had failed to prove those charges as basis for probation violation); *Connecticut Natural Gas Corp.* v. *Miller*, 239 Conn. 313, 323, 684 A.2d 1173 (1996) (doctrine of res judicata

cannot be invoked to preclude relitigation of determination made in summary proceeding for appointment of receiver of rents brought pursuant to General Statutes § 16-262f); *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, 236 Conn. 582, 598, 674 A.2d 1290 (1996) (doctrine of res judicata does not bar relitigation of tort claim that had been litigated and decided in prior marital dissolution proceeding); *Genovese* v. *Gallo Wine Merchants, Inc.*, 226 Conn. 475, 486–89, 628 A.2d 946 (1993) (adverse determination on issue in arbitration proceeding does not preclude employee from relitigating issue in subsequent action for retaliatory discharge). In establishing exceptions to the general application of the preclusion doctrines, we have identified several factors to consider, including: (1) whether another public policy interest outweighs the interest of finality served by the preclusion doctrines; see, e.g., *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998*, supra, 127–28; (2) whether the incentive to litigate a claim or issue differs as between the two forums; *Isaac* v. *Truck Service, Inc.*, supra, 428–29; *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, supra, 594; (3) whether the opportunity to litigate the claim or issue differs as between the two forums; see, e.g., *Connecticut Natural Gas Corp.* v. *Miller,* supra, 323; *Genovese* v. *Gallo Wine Merchants, Inc.*, supra, 489; and (4) whether the legislature has evinced an intent that the doctrine should not apply. See, e.g., *Genovese* v. *Gallo Wine Merchants, Inc.*, supra, 487–88." *Cumberland Farms, Inc.* v. *Groton*, supra, 262 Conn. 60–61.

The plaintiffs claim that the trial court improperly determined that res judicata barred their claims of bad faith, breach of contract and CUTPA/CUIPA. Specifically, they contend that the claims raised in action II were not adjudicated in action I, do not arise out of the same transaction that gave rise to action I, and are based on different facts than those alleged in action I.

Additionally, they claim that the policies underlying the doctrine of res judicata are not furthered by its application in the present case and that the administration of justice would be better served by allowing action II to proceed. Our examination of the facts that gave rise to action I and those claims that could have been litigated in connection with action II persuades us that the claims asserted in the present action are barred by res judicata.

In deciding whether the doctrine of res judicata is determinative, we begin with the question of whether the second action stems from the same transaction as the first. "We have adopted a transactional test as a guide to determining whether an action involves the same claim as an earlier action so as to trigger operation of the doctrine of res judicata. [T]he claim [that is] extinguished [by the judgment in the first action] includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a transaction, and what groupings constitute a series, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. . . . *Orselet* v. *DeMatteo*, [206 Conn. 542, 545–46, 539 A.2d 95 (1988)]; see *Duhaime* v. *American Reserve Life Ins. Co.*, 200 Conn. 360, 364–65, 511 A.2d 333 (1986); see also *Nevada* v. *United States*, 463 U.S. 110, 130–31 n.12, 103 S. Ct. 2906, 77 L. Ed. 2d 509 (1983); 1 Restatement (Second), [supra, § 24]. In applying the transactional test, we compare the complaint in the second action with the pleadings and the judgment in the earlier action. See, e.g. . . . *Commissioner of Environmental Protection* v.

*Connecticut Building Wrecking Co.*, 227 Conn. 175, 189–90, 629 A.2d 1116 (1993)." (Citations omitted; internal quotation marks omitted.) *Fink* v. *Golenbock*, 238 Conn. 183, 191–92, 680 A.2d 1243 (1996).

Turning to the allegations in the complaints, it is apparent that both actions allege a breach of contract,[3] involve the same parties, arise from the same motor vehicle accident, claim uninsured motorist benefits under the same policy issued to Powell by the defendant and turn essentially on the defendant's refusal to pay in accordance with the terms of that uninsured motorist policy. In action I, as part of the claim to recover uninsured motorists benefits, the complaint necessarily included allegations of the existence of the insurance contract, the defendant's obligation to provide uninsured motorist benefits under the policy and its breach of that obligation. See *Williams* v. *State Farm Mutual Automobile Ins. Co.*, 229 Conn. 359, 368, 641 A.2d 783 (1994) (to recover uninsured motorist benefits, plaintiff must establish: "[1] that the other motorist was uninsured; [2] that the other motorist was legally liable under the prevailing law; and [3] the amount of liability"); *Lees* v. *Middlesex Ins. Co.*, 219 Conn. 644, 653, 594 A.2d 952 (1991) ("[i]n an action on an insurance policy, the conduct giving rise to the insurer's liability is a failure to pay out the policy proceeds when the insurer is contractually bound to do so"). In action II, the allegations assert that the plaintiffs demanded the

---

[3] Although the plaintiffs label the first action as a claim for uninsured motorist benefits and not as one in contract, this is a distinction without a difference for our purposes. See *Dodd* v. *Middlesex Mutual Assurance Co.*, 242 Conn. 375, 384, 698 A.2d 859 (1997) ("The obligation of [an] insurance carrier providing uninsured motorist coverage as a part of its liability insurance coverage on the automobile of the insured person is a contractual obligation arising under the policy of insurance. . . . Payments made pursuant to an uninsured motorist policy are paid on behalf of the insured, and not on behalf of the financially irresponsible motorist who has caused the insured's injuries." [Citation omitted; internal quotation marks omitted.]).

policy limits, that the defendant refused to honor its contractual obligations, that the defendant delayed resolution of the plaintiffs' claims to profit from their vulnerable position, and that the defendant improperly investigated the plaintiffs.

Beyond the breach of contract counts in both actions, the bad faith and CUTPA/CUIPA counts in action II also arise out of the defendant's refusal to pay the policy benefits despite its contractual obligations. The plaintiffs consistently have complained of the defendant's wrongful failure to honor its obligation to make payments in accordance with the terms of the uninsured motorist insurance policy issued to Powell. Their claims turn on essentially one event—the defendant's refusal to pay in accordance with the terms of Powell's policy. In particular, they allege that the defendant engaged in bad faith by refusing to settle for the policy limits and, thereafter, by refusing to settle their claims for the policy limits in connection with the offer of judgment. The unfair and unscrupulous conduct of which the defendant is accused pertains to its refusal to settle within the policy limits, both before and after the offer of judgment, its delaying of the resolution of the claims and its harassment of the plaintiffs in order to force them to settle for an unfair amount. Appropriately, the trial court recognized that this case was markedly similar to, and indeed controlled by, *Duhaime* v. *American Reserve Life Ins. Co.*, supra, 200 Conn. 364–65 (holding that res judicata extinguishes claim despite fact that "the plaintiff is prepared in the second action [1] [t]o present evidence or grounds or theories of the case not presented in the first action, or [2] [t]o seek remedies or forms of relief not demanded in the first action"). Accordingly, we conclude that the trial court properly applied the transactional test to conclude that the claims in action II could have been made in action I and are, therefore, barred by res judicata.

The plaintiffs contend, however, that, because some of the defendant's conduct had not yet occurred when they commenced action I, they should not be barred from bringing action II. Specifically, they contend that the defendant subjected them to an investigation, including an independent medical records review, and that this fact, which differentiated the two actions, did not occur until after the defendant had rejected the plaintiffs' offer of judgment. As the trial court recognized, however, in concluding that the facts in both actions are sufficiently related under the transaction test factors, the defendant's investigation of the plaintiffs certainly was known to them during the pendency of the first action. In specific, the revised complaint in action II alleges that the defendant's bad faith conduct—in delaying settlement and thereby forcing a lawsuit and trial and in harassing the plaintiffs in an attempt to force a settlement for a lower amount than was fair— existed "[a]t all times mentioned" in the complaint or "[f]or a period of over three years" from the date of the accident.

We emphasize the well settled rule that "[a] judgment is final not only as to every matter which was offered to sustain the claim, *but also as to any other admissible matter which might have been offered for that purpose.* . . . 1 Restatement (Second), [supra] §§ 19, 25; [F.] James & [G.] Hazard, Civil Procedure [2d Ed. 1977] § 11.3." (Citation omitted; emphasis added; internal quotation marks omitted.) *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, supra, 236 Conn. 589. "The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it." Id. Therefore, despite the fact that the complaint in action I did not include express claims of bad faith and violations of CUTPA/CUIPA, those claims are nevertheless extinguished because they could have been

asserted in action I. See *Duhaime* v. *American Reserve Life Ins. Co.*, supra, 200 Conn. 365. The additional allegations to which the plaintiffs direct our attention merely constitute *additional* evidence in support of their claims regarding the defendant's wrongful failure to pay the policy benefits and, therefore, are extinguished by the judgment in action I as part of the transaction, or series of connected transactions, out of which the action arose.

Moreover, as the trial court remarked, even "[i]f the plaintiffs did not form a belief that the defendant was acting in bad faith, and/or in violation of CUTPA/CUIPA, until after their offer of judgment was not accepted, they, soon after, could have amended their complaint to include those allegations. . . . The first case went to trial only thirteen months after the return date. The trial date certainly could have been adjusted to accommodate any amendments to the complaint." See *Monterey Plaza Hotel Ltd. Partnership* v. *Local 483 of the Hotel Employees & Restaurant Employees Union*, 215 F.3d 923, 927–28 (9th Cir. 2000) (when claims involve "[t]he same harms and primary rights . . . the doctrine of res judicata bars the relitigation of all events which occurred prior to entry of judgment, and not just those acts that happened before the complaint was filed"). Accordingly, we conclude that the trial court properly determined that the doctrine of res judicata was applicable because the claims in action II are the same as the claim in action I, in that they grew out of the same transaction or nucleus of facts, entailed the presentation of the same evidence, and involved infringement of the same rights.

In deciding whether the trial court properly granted summary judgment, we also consider, however, whether other factors weigh against application of the doctrine, including, but not limited to, whether litigating the cases together would have worked a hardship or

caused unfair prejudice to the plaintiffs. We conclude that, because the factual underpinnings of the claims asserted in action II and those actually litigated in action I are the same, they formed " 'a convenient trial unit' " that would have favored consolidation.[4] *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, supra, 236 Conn. 590. It is apparent that there would have been a considerable overlap of witnesses and proof relevant to both actions. Much of the evidence probative in the contractual action seeking uninsured motorist benefits also would have been probative of the other claims, particularly because those claims are predicated on the defendant's refusal to settle the uninsured motorist claim within the policy limits. In other words, the decision as to whether the defendant's failure to settle the claims was reasonable would have necessitated inquiry into the nature of the accident, the terms and conditions of the policy, the contributory negligence of the insured and the medical evidence regarding the claimed disability, all factors relevant and necessary to the issues in action I. See *Fink* v. *Golenbock*, supra, 238 Conn. 197 (evidence supporting tort and CUTPA claims litigated in civil action could have been brought in prior arbitration proceeding considering other issues arising under employment agreement "because it is this agreement that establishes the employment relationship from which the underlying conduct that forms the basis of the dispute stems"). Therefore, in light of the present trend to "see [the term] claim in factual terms and to make it coterminous with the [term] transaction regardless of the number of substantive theories . . . available to the plaintiff," and regardless of the "variant forms of relief," the "number of primary rights that may have been invaded," or the "variations in the evidence

---

[4] For essentially the same reasons, we conclude that it would not have been beyond the reasonable expectations of the parties for this group of facts to have been treated as a single cause of action. See *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, supra, 236 Conn. 590.

needed to support the theories or rights"; 1 Restatement (Second), supra, § 24, comment (a); the considerable overlapping nature of the evidence in the present case compels the conclusion that application of the doctrine of res judicata was proper.[5]

The plaintiffs contend nevertheless that, independent of the degree to which the evidence supporting each claim overlaps, there are two primary grounds that favor nonjoinder of the actions and, accordingly, undermine application of the doctrine of res judicata. First, they posit that a "procedural quagmire" would ensue because the attorneys involved in action I could be called as witnesses in connection with action II. As the trial court noted, however, in rejecting this argument as a basis for declining to apply the doctrine, "[t]his issue would have to be dealt with, under any circumstance, prior to the trial of a bad faith CUTPA/CUIPA case."[6] Second, the plaintiffs contend that they had to procure a judgment in action I that the defendant had

---

[5] Additionally, we note that any potential prejudice resulting from facts that are not related could be resolved by bifurcating the trial. With bifurcation, the evidence common to both claims, which was considerable, could have been presented at once and not " 'in separate lawsuits commenced at a distance of months or years.' " *Porn* v. *National Grange Mutual Ins. Co.*, 93 F.3d 31, 36 (1st Cir. 1996). Indeed, "[p]ursuant to General Statutes § 52-205 and Practice Book § 15-1, the trial court may order that one or more issues that are joined be tried before the others. The interests served by bifurcated trials are convenience, negation of prejudice and judicial efficiency. . . . Bifurcation may be appropriate in cases in which litigation of one issue may obviate the need to litigate another issue. . . . The bifurcation of trial proceedings lies solely within the discretion of the trial court." (Citation omitted; internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 448–49, 820 A.2d 258 (2003).

[6] In this regard, we note that in a case like the present one, when all the claims properly are brought in one action, should the plaintiffs make a good faith argument that, to establish some claims, they need to elicit testimony from the attorney defending the case, the proper course may be for the trial court to bifurcate the issues or require the defendant to obtain new counsel. Such circumstances do not, however, override the proper application of the doctrine of res judicata.

breached the insurance contract for uninsured motorist benefits; see footnote 3 of this opinion; before the cause of action for bad faith could accrue and, therefore, their bad faith, CUTPA/CUIPA and contract claims could not be joined in the same action. Their contention rests on the assumption that a judgment of contract breach is a condition precedent to the pursuit of a bad faith claim. We rejected this contention, however, in *Duhaime* v. *American Reserve Life Ins. Co.*, supra, 200 Conn. 365–66, when we invoked the doctrine of res judicata and concluded that the plaintiff's earlier action for breach of the insurance policy barred a subsequent action for bad faith. In so holding, we implicitly acknowledged that a bad faith action can accrue without a separate judgment of contract breach. To the extent that any question remains, we make explicit today what was implicit in *Duhaime*, that is, that obtaining a judgment for breach of contract against the defendant is not a necessary predicate to bringing a bad faith claim.

In conclusion, we are not persuaded that the nominal concerns raised by the plaintiffs are sufficient to overcome the policy goals of stability in judgments and certainty in the management of affairs that the doctrine of res judicata advances. Accordingly, we conclude that the trial court properly applied the doctrine of res judicata to render summary judgment in the defendant's favor.

The judgment is affirmed.

In this opinion the other justices concurred.