WILLIAM MASSEY ET AL. *v.* TOWN OF
BRANFORD ET AL.
(AC 30258)

DiPentima, Lavine and Peters, Js.

454

Argued September 22, 2009—officially released February 23, 2010

*Dawn Massey*, pro se, and *William Massey*, pro se, the appellants (plaintiffs).

*William H. Clendenen, Jr.*, with whom were *Irving H. Perlmutter* and *Maura A. Mastrony*, and, on the brief, *Kevin C. Shea*, for the appellees (named defendant et al.).

*Opinion*

DiPENTIMA, J. In this appeal arising from a municipal tax assessment dispute, the plaintiffs, William Massey and Dawn Massey, challenge the rendering of summary

judgment in favor of the defendants, the town of Branford (town), Trista Clyne, Michael Milici and Barbara Neal.[1] We affirm the judgment of the trial court.

The parties are before us as a result of a protracted dispute over the valuation and assessment of the plaintiffs' property located at 225 Stony Creek Road, Branford (property). Prior to the action in this appeal, the plaintiffs had instituted an action challenging the valuation and assessment of their property for certain grand list years, including 2004. In that case, the trial court, *Munro, J.*, rendered judgment enforcing a settlement agreement between the parties and establishing the value of the property as of October 1, 2004, at $675,000. The plaintiffs brought an appeal from that judgment in *Massey* v. *Branford*, 118 Conn. App. 491, 985 A.2d 335 (2009) (*Massey I*).[2] While that appeal was pending, the plaintiffs instituted this action (*Massey II*) in May, 2007, challenging the valuation and assessment of the property for grand list year 2006. In the operative fourteen count complaint, the plaintiffs allege (1) excessive valuation against the town pursuant to General Statutes § 12-117a, (2) wrongful assessment against the town pursuant to General Statutes § 12-119, (3) unlawful, malicious, wanton, wilful, reckless and negligent actions, inactions or omissions of the town, Milici, Neal and Clyne, (4) invalidation of the October 1, 2006 grand list under General Statutes § 12-121f, (5) violations of General Statutes §§ 1-210, 1-212, 7-27 and 12-121f (15), (6) negligent supervision by the town, (7) civil conspiracy, (8) fraudulent conveyance under common-law principles and General Statutes § 52-552 et seq.,[3] and

[1] Parish Farms, LLC, also was named as a defendant. Because the plaintiffs withdrew the action as against Parish Farms, LLC, we refer in this opinion to the town, Clyne, Milici and Neal as the defendants.

[2] The defendants in *Massey I* were the town, Milici and Neal, all of whom are defendants in this appeal.

[3] On August 22, 2008, the plaintiffs withdrew the two fraudulent conveyance claims that were not subject to the summary judgment motion.

(9) fees and penalties for official misconduct under General Statutes § 12-170 against Milici and Neal.

On September 21, 2007, the defendants filed a motion for summary judgment, accompanied by a memorandum of law in support of their motion. On November 16, 2007, the plaintiffs filed an objection, memorandum of law and affidavits in opposition to the motion for summary judgment. There were additional submissions by the parties, and a hearing was held on the motion.

On July 15, 2008, the court issued a memorandum of decision granting the motion for summary judgment in favor of the defendants. The court disposed of all twelve remaining counts. The court found that the plaintiffs did not have standing to bring counts one through six, that the plaintiffs failed to state a cause of action in counts seven, eight, ten, thirteen and fourteen, and that the plaintiffs were barred from bringing counts one, two, three and nine under of the doctrine of res judicata. The plaintiffs now appeal from that judgment.[4]

Our standard of review for summary judgment is well settled. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are

---

[4] The plaintiffs subsequently filed an amended appeal to include the court's orders denying their motions to correct and to reargue and to vacate. They have not pursued this claim, and so we do not address it.

legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Aspetuck Valley Country Club, Inc.* v. *Weston*, 292 Conn. 817, 822, 975 A.2d 1241 (2009).

I

We first address standing. "The issue of standing implicates the trial court's subject matter jurisdiction and therefore presents a threshold issue for our determination." *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 511, 518, 970 A.2d 583 (2009). The plaintiffs claim that the court improperly granted the defendants' motion for summary judgment as to counts one through six for lack of standing. We agree in part.

Our analysis of the plaintiffs' claim is governed by our well established principles of standing. "The issue of standing implicates subject matter jurisdiction . . . . [I]t is the burden of the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute. . . . It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. . . . Because a determination regarding the trial court's subject matter jurisdiction raises a question of law, our review is plenary. . . .

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the

person whose standing is challenged is a proper party to request an adjudication of the issue . . . . Standing requires no more than a colorable claim of injury; a [party] ordinarily establishes . . . standing by allegations of injury [that he or she has suffered or is likely to suffer]. Similarly, standing exists to attempt to vindicate arguably protected interests. . . .

"Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the subject matter of the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Citations omitted; internal quotation marks omitted.) *Wilcox* v. *Webster Ins., Inc.*, 294 Conn. 206, 213–15, 982 A.2d 1053 (2009).

"If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . .

"Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of the case over which

it is without jurisdiction . . . . The objection of want of jurisdiction may be made at any time . . . [a]nd the court or tribunal may act on its own motion, and should do so when the lack of jurisdiction is called to its attention. . . . The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage [of] the proceedings." (Internal quotation marks omitted.) *Lewis* v. *Planning & Zoning Commission*, 275 Conn. 383, 390, 880 A.2d 865 (2005).

## A

We first examine the plaintiffs' standing to bring counts one, two and three of the operative complaint, alleging excessive valuation pursuant to § 12-117a, wrongful assessment pursuant to § 12-119, and unlawful, malicious, wanton, wilful, reckless and negligent actions, inactions or omissions against the town.

The court, in its memorandum of decision granting the motion for summary judgment, approached the issue of the plaintiffs' standing in these counts by reasoning that because the fair market value and assessment value had been reviewed and set by the court in *Massey I* and not "unilaterally by the town and its officers," the town and its officials could not be held responsible for causing any alleged injury by the assessments that had been set. The court reasoned that the process of setting property values is already designed to ensure that town officials cannot take action that, in and of itself, unfairly injures a property owner who appeals to a higher court. The court held that "the trial court here was required to, and did, make its own determination as to the value of the [plaintiffs'] property. Therefore, the plaintiffs have no standing to protest any action by the town in setting their assessment since it was the court, and not the town, that did so."

Sections 12-117a and 12-119 clearly create causes of action for taxpayers who have been aggrieved by excessive and wrongful valuation of their property. Section

12-117a provides taxpayers with an opportunity to appeal to the Superior Court upon an allegation that their property tax assessment is excessive. Section 12-119 provides a remedy by providing for an application to the Superior Court for "such relief upon such terms and in such manner and form as to justice and equity appertains, and costs may be taxed at the discretion of the court" when property is found to be wrongfully assessed. In their complaint, the plaintiffs allege that the assessment of their property was grossly excessive and unlawful and that the town's wilful and wanton negligence in that assessment violated their civil rights. Therefore, the plaintiffs are aggrieved and have standing to bring the claims alleged in counts one, two and three.

B

The plaintiffs also assert that the court improperly granted the motion for summary judgment on the basis of their lack of standing to bring count four of the operative complaint, seeking invalidation of the October 1, 2006 grand list and asserting violations of § 12-121f (a) (11) and (13), (b) (1) and (6), and (c) (5). In the operative complaint, the plaintiffs allege that they are statutorily aggrieved as taxpayers and therefore have standing to pursue these claims. More specifically, the plaintiffs claim that based on several administrative issues, including the allegations that Neal and several members of the Branford board of assessment appeals (board) did not take the oath upon the October 1, 2006 grand list and that certain board members did not sign the October 1, 2006 grand list, in violation of § 12-121f, the plaintiffs personally were aggrieved as property owners and taxpayers in the town and therefore have standing to pursue these claims.

The court found that the plaintiffs did not have standing to bring the claim alleged in count four because

"the plaintiffs' complaint does not set forth any factual basis to support an inference that the errors or omissions they allege regarding the 2006 grand list will produce a substantial injustice to [town] taxpayers as a whole, nor have the plaintiffs submitted any evidence in opposition to the motion for summary judgment to support such an inference." The court supported its decision by citing relevant precedent of our Supreme Court: "Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Internal quotation marks omitted.) *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 288, 933 A.2d 256 (2007). We agree with the court's reasoning.

Section 12-121f does not specify who has standing as a plaintiff to pursue a claim. Further, none of the affidavits submitted by the plaintiffs throughout this case contains sufficient facts to support the allegations under the relevant statutory scheme. The facts presented by the plaintiffs in this case are not sufficient to support the allegation that the alleged errors or omissions by the assessor or the board will produce a substantial injustice to the taxpayers of the town as a whole, which is required in order to prevail under § 12-121f. We conclude that the plaintiffs did not have standing to pursue count four, and it properly was disposed of on summary judgment.

C

The court also concluded that the plaintiffs lacked standing to bring counts five and six, alleging unlawful, malicious, wanton, wilful, reckless or negligent actions, inactions or omissions by Milici and Neal in various assessments in their capacity as town officials. The

plaintiffs allege that Milici and Neal selectively reduced the assessment of other properties in the town, owned by other individuals, and that, as a result, town taxpayers as a whole, including the plaintiffs, were injured.

The court determined that the assessment of the plaintiffs' property is not affected by the assessments of other properties in the town. In its memorandum of decision, the court found that "the plaintiffs lack standing to assert such a claim because their assessment has been established by court order and is not affected by the assessments of other properties in the town." Although we disagree with this specific determination; see part I A of this opinion; we nonetheless find that the plaintiffs have failed to state a cause of action in counts five and six. See *Hopkins* v. *O'Connor*, 282 Conn. 821, 827, 925 A.2d 1030 (2007) ("[w]here the trial court reaches a correct decision but on mistaken grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it" [internal quotation marks omitted]).

A review of §§ 12-117a and 12-119 reveals that there is no private right of action for taxpayers against municipal officials in their individual capacities for alleged wrongdoing in the tax assessment of properties not owned or leased by or directly connected to those taxpayers. Our Supreme Court has noted that "there exists a presumption in Connecticut that private enforcement does not exist unless expressly provided in a statute." *Provencher* v. *Enfield*, 284 Conn. 772, 777, 936 A.2d 625 (2007). Our Supreme Court also has recognized that a plaintiff may overcome that presumption but that the plaintiff "bears the burden of demonstrating that such an action is created implicitly in the statute." Id., 777–78. Because the plaintiffs here have failed to meet that burden, the claims under counts five and six must fail.

## II

The plaintiffs claim that the court improperly granted the motion for summary judgment as to counts one, two, three and nine under the doctrines of either res judicata or collateral estoppel. The plaintiffs contend that these doctrines do not apply because this tax appeal was designed to challenge their tax assessment for years that occurred subsequent to their prior tax appeal, which related to the 2004 grand list. We disagree and find that the court properly granted the motion for summary judgment as to counts one, two and three pursuant to the doctrine of collateral estoppel and as to count nine pursuant to the doctrine of res judicata.[5]

We begin by setting out the doctrines of res judicata and collateral estoppel. "Claim preclusion (res judicata) and issue preclusion (collateral estoppel) have been described as related ideas on a continuum. . . . [W]e have observed that whether to apply either doctrine in any particular case should be made based upon a consideration of the doctrine's underlying policies, namely, the interests of the defendant and of the courts in bringing litigation to a close . . . and the competing interest of the plaintiff in the vindication of a just claim. . . . The judicial doctrines of res judicata and collateral estoppel are based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate." (Citations omitted; internal quotation marks omitted.) *Powell* v. *Infinity Ins. Co.*, 282 Conn. 594, 600–602, 922 A.2d 1073 (2007).

"The doctrine of res judicata holds that an existing final judgment rendered upon the merits without fraud

---

[5] The plaintiffs additionally argue that collateral estoppel does not apply in this case because the issues in *Massey I* were not "actually determined," as judgment was not rendered on the merits due to fraud and collusion in obtaining the settlement agreement. All doubt concerning the finality of the settlement agreement was removed in *Massey I*, supra, 118 Conn. App. 491, and will not be addressed further in this case.

or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. . . . If the same cause of action is again sued on, the judgment is a bar with respect to any claims relating to the cause of action which were actually made or which might have been made." (Internal quotation marks omitted.) *Tuccio Custom Homes, LLC* v. *Lamonica*, 116 Conn. App. 527, 529–30, 975 A.2d 1280 (2009). Res judicata "bars not only subsequent relitigation of a claim previously asserted, but subsequent relitigation of any claims relating to the same cause of action . . . which might have been made." (Internal quotation marks omitted.) *Isaac* v. *Truck Service, Inc.*, 253 Conn. 416, 421, 752 A.2d 509 (2000).

"Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim. . . . Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . . Issue preclusion arises when an issue is actually litigated and determined by a valid and final judgment, and that determination is essential to the judgment." (Citation omitted; internal quotation marks omitted.) *Byars* v. *Berg*, 116 Conn. App. 843, 846, 977 A.2d 734 (2009).

Our Supreme Court has applied the doctrines of res judicata and collateral estoppel in the context of tax assessment appeals. Because we are dealing in the present case with tax assessments for different tax years, "we are not directly concerned with res judicata but

instead with that branch of the doctrine known as collateral estoppel. . . . Collateral estoppel is that aspect of res judicata which is concerned with the effect of a final judgment on the subsequent litigation of a different cause of action involving some of the issues determined in a former action between the parties. . . . [A] prior judgment between the parties has been held to operate as an estoppel in a suit on a cause of action different from that forming the basis for the original suit only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered." (Citations omitted; internal quotation marks omitted.) *Uniroyal, Inc.* v. *Board of Tax Review*, 182 Conn. 619, 634 n.9, 438 A.2d 782 (1981).

"The applicability of the doctrines of collateral estoppel or res judicata presents a question of law that we review de novo." *Powell* v. *Infinity Ins. Co.*, supra, 282 Conn. 601.

A

In counts one, two and three, the plaintiffs allege excessive assessment as of October 1, 2006, in violation of § 12-117a, wrongful assessment as of October 1, 2006, in violation of § 12-119 and unlawful, malicious, wanton, wilful, reckless or negligent actions, inactions or omissions involving the 2006 grand list by the town. The court granted the motion for summary judgment in favor of the defendants on these counts pursuant to the doctrines of res judicata and collateral estoppel. We agree and find our Supreme Court's decision in *Uniroyal, Inc.* v. *Board of Tax Review*, supra, 182 Conn. 619, to be controlling. We conclude that these claims were decided in *Massey I*, that the doctrine of collateral estoppel bars their relitigation and that no genuine issue of material fact exists.

The defendants claim that the judgment in *Massey I* establishing the October 1, 2004 valuation applies to

the years 2003 through 2008. The plaintiffs claim that the judgment only bars additional action on the 2004 grand list itself. However, in *Uniroyal, Inc.*, a case in which the plaintiffs brought a challenge to the Superior Court from the refusal of the board of tax review of the town of Middlebury to reduce the valuation of their land and buildings located within the town for the grand lists of three separate years after the assessment of their property already had been determined, our Supreme Court held that "[t]he issue decided in [the first case] is thus dispositive of the plaintiffs' claim. The earlier decision bars the plaintiffs' claim that the valuation established for [the earlier year] is improper. The fact that this valuation has been applied to successive grand lists does not permit a different result. Consideration of the contrary result demonstrates the inefficacy of permitting a litigant to contest the validity of an assessment figure on [five] different occasions (i.e., each of the [five] years permitted by General Statutes § 12-62). The [previous] decision is conclusive as to the question of whether the value established was a fair . . . value [for that previous year]. Its application to subsequent years (as permitted by General Statutes § 12-62) does not permit relitigation of issues previously decided." Id., 633–34.

In *Massey I*, this court affirmed the trial court's decision that a full value of $675,000 was a fair and proper valuation of the plaintiffs' property for the October 1, 2004 grand list. The 2004 revaluation in Branford is valid for a period of five years; see General Statutes § 12-62 (b) (1); so that the annual grand list for every year since October 1, 2004, has been based on the 2004 values. The litigation of the 2004 listing, in *Massey I*, determined that the 2004 valuation of $675,000 was proper. The issue decided in *Massey I* is thus dispositive of the plaintiffs' claim. That earlier decision thus bars

the plaintiffs' claim in the present case that the valuations established for 2006 are improper.

As this court recently held in *Massey I*, "[i]n light of the unconditional settlement agreement between the parties, the plaintiffs are barred from further pursuit of their tax claims against the defendants in any forum." *Massey I*, supra, 118 Conn. App. 506. Pursuant to § 12-62 and the *Uniroyal, Inc.*, precedent, this proposition also applies to the case in this appeal. The value of the plaintiffs' property was established for the October 1, 2004 grand list, challenged in the appeal to the Superior Court in *Massey I*, and affirmed both in the trial court and on appeal to this court. See id., 491. The 2004 value applies to the grand list for five subsequent years and does not permit a different result in this case. See General Statutes § 12-62 (b) (1). The court properly granted the motion for summary judgment as to counts one, two and three.

B

In count nine, the plaintiffs allege negligent supervision against the town relating to its control of its employees and counsel in *Massey I*. The plaintiffs specifically claim that the town "breached its duty of due care" and "caused and/or allowed and/or permitted certain attorneys representing the [town] to maliciously hinder, obstruct, delay and withhold records . . . by making and filing untrue pleadings and employing other wrongful and unfair means . . . ." The plaintiffs claim that the court wrongly granted the motion for summary judgment as to count nine. We disagree and affirm the court's judgment.

"In deciding whether the doctrine of res judicata is determinative, we begin with the question of whether the second action stems from the same transaction as the first. We have adopted a transactional test as a guide to determining whether an action involves the same

claim as an earlier action so as to trigger operation of the doctrine of res judicata. [T]he claim [that is] extinguished [by the judgment in the first action] includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a transaction, and what groupings constitute a series, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." (Internal quotation marks omitted.) *Powell* v. *Infinity Ins. Co.*, supra, 282 Conn. 604.

The defendants claim that the plaintiffs cannot bring a separate action for negligent supervision in this case because these claims could have been raised in *Massey I.* We agree. The plaintiffs' claim in count nine of the present case is precluded because it grew out of the same transaction or nucleus of facts, entailed the presentation of the same evidence and involved infringement of the same rights as those implicated in the prior action. Turning to the allegations in the complaint, it is apparent that both actions allege wrongful conduct by the town in the pursuit of the tax assessment of the plaintiffs' property, involve the same parties, arise from the same disputed assessment period, allege wrongdoing that occurred before and during the first action, and depend on the alleged infringement of the same rights. Therefore, the plaintiffs had the option to raise this claim of negligent supervision by the town in *Massey I*, which they did not do.

"We emphasize the well settled rule that [a] judgment is final not only as to every matter which was offered to sustain the claim, *but also as to any other admissible*

*matter which might have been offered for that purpose.*
. . . The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Powell* v. *Infinity Ins. Co.*, supra, 282 Conn. 607.

Accordingly, we conclude that the court properly granted the motion for summary judgment in count nine of the complaint pursuant to the doctrine of res judicata because the claims in *Massey I* are the same as the claim in count nine of *Massey II*, in that they grew out of the same transaction or nucleus of facts, entailed the presentation of the same evidence and involved infringement of the same rights.

### III

The plaintiffs next claim that the court improperly granted the motion for summary judgment as to several counts for failure to state a cause of action as a matter of law. Specifically, the plaintiffs claim in their brief that counts seven, thirteen and fourteen allege proper causes of action in the operative complaint and that these claims are actionable.[6]

### A

In count seven, the plaintiffs allege unlawful, malicious, wanton, wilful, reckless or negligent actions or

---

[6] The plaintiffs do not address counts eight or ten on appeal in their brief. They argue generally that the court should reverse "in whole" the decision granting the motion for summary judgment and argue that they had a proper cause of action for some of the counts that the court disposed of on summary judgment for failure to state a cause of action but do not specifically address these two counts. Therefore, we find that to the extent that the plaintiffs argue that the claims as to counts eight and ten should be reversed, those claims are briefed inadequately, and we decline to review them any further. See *State* v. *Glenn*, 97 Conn. App. 719, 737 n.17, 906 A.2d 705 (2006) ("[w]here the parties cite no law and provide no analysis of their claims, we do not review such claims" [internal quotation marks omitted]), cert. denied, 281 Conn. 913, 916 A.2d 55 (2007).

inactions or omissions against Clyne. Specifically, they allege that Clyne improperly handled the various requests made under the Freedom of Information Act (act); General Statutes § 1-200 et seq.; made by the plaintiffs. As the court stated in its memorandum of decision, however, our Supreme Court clearly has held that the act does not provide a private right of action for violation of its provisions and that the penalty provisions of the act are the exclusive remedy for the violation of a right conferred by the act. *Pane* v. *Danbury*, 267 Conn. 669, 680, 841 A.2d 684 (2004). Therefore, the court properly granted the motion for summary judgment for failure to state a claim in count seven.

## B

In counts thirteen and fourteen, the plaintiffs seek penalties pursuant to § 12-170 against Milici and Neal for official misconduct. Section 12-170 provides that "[e]ach assessor, member of the board of assessment appeals, selectman, committee or collector, who does any unlawful act or omits to do any necessary act connected with the levy, assessment or collection of any tax, shall forfeit fifty dollars to the person aggrieved thereby, to be collected by such person in an action on this statute; and each collector who charges or receives any illegal fees shall, in addition to said sum of fifty dollars, also forfeit double the amount of such illegal fees to the person aggrieved, to be collected as aforesaid." In disposing of these counts, the court found that "the claims of the plaintiffs in both counts thirteen and fourteen are based on the incorporation of their claims in counts one to ten [as] to which the court has already determined that the defendants are entitled to summary judgment." The plaintiffs allege that the statutory language permits their recovery under § 12-170. Specifically, they claim that because the "before-mentioned claims should not have been stricken because [the] defendants are not entitled to summary judgment on

those counts," the plaintiffs should be allowed to pursue these claims as well. In light of our determination as to counts one through ten, we conclude that the court properly rendered summary judgment as to counts thirteen and fourteen.

The judgment is affirmed.

In this opinion the other judges concurred.