KATHLEEN TARRO ET AL. *v.* MASTRIANI
REALTY, LLC, ET AL.
(AC 33921)
(AC 33922)

Lavine, Robinson and Schaller, Js.

Argued October 16, 2012—officially released May 7, 2013

*Juri E. Taalman,* with whom, on the brief, was *Timothy Brignole,* for the appellants (plaintiffs).

*Joseph M. Busher, Jr.*, with whom, on the brief, was *Philip R. Dunn, Jr.*, for the appellees (defendants).

ROBINSON, J. The plaintiffs, Kathleen Tarro and Victorian Elegance, LLC, appeal from summary judgments rendered against them in two civil actions that they brought against the defendants, Mastriani Realty, LLC, James D. Mastriani (Jay Mastriani) and James V. Mastriani. The plaintiffs claim that, in both actions, the court improperly concluded that there were no genuine issues of material fact and that the defendants were entitled to judgments as a matter of law because the issues raised therein had been litigated previously or could have been litigated in an earlier commercial eviction action brought by the defendants against the plaintiffs, and, therefore, the actions were barred by res judicata and collateral estoppel. We disagree and, accordingly, affirm the judgments of the court.

The record reveals the following relevant facts and procedural history. Tarro is the sole member of Victorian Elegance, LLC, which company owned and operated Victorian Elegance, a business previously located in a shopping center at 156 Broad Street in Windsor (subject premises). The business sold antiques and other goods at retail and on consignment. Mastriani Realty, LLC, is the owner of the subject premises, and the other defendants are the owners and operators of Mastriani Realty, LLC. Victorian Elegance, LLC, sublet the subject premises from Prudential Realty. When Prudential Realty failed to pay rent, Mastriani Realty, LLC, initiated summary process eviction proceedings against Victorian Elegance, LLC (eviction action). A stipulated judgment was rendered by the housing court on July 13, 2010, that granted Mastriani Realty, LLC, possession of the subject premises beginning on October 1, 2010, with the condition that if Victorian Elegance, LLC, made

a use and occupancy payment of $2000, the stay of execution would be extended to November 1, 2010.[1]

Victorian Elegance, LLC, failed to vacate the premises by October 1, 2010, and it did not make the $2000 use and occupancy payment. Accordingly, on October 1, 2010, the defendants sought and received a nonresidential summary process execution. The execution contained notice that Mastriani Realty, LLC, would take possession of the subject premises on October 8, 2010, and also included the following additional notice: "If you do not move out by that date, this paper gives your landlord the legal right to inventory your possessions and personal effects and to store them in the premises or to remove them and store them elsewhere. If you do not claim your possessions and personal effects and pay the removal and storage costs within [fifteen] days after [October 8, 2010], your possessions and personal effects will be forfeited to the landlord." On October 7, 2010, Victorian Elegance, LLC, filed a motion to quash the execution and an application for a temporary injunction staying enforcement of the execution until the court heard its motion to quash. According to its motion, Victorian Elegance, LLC, needed additional time to remove its personal property from the subject premises and it was willing to pay $2000 to obtain a stay of enforcement until the end of the month. The court granted a temporary injunction prohibiting enforcement of the execution and scheduled a hearing on the motion to quash. Following the hearing, the court denied the motion to quash, ordered that $2000 remitted to the court by Victorian Elegance, LLC, be dispersed to Mastriani Realty, LLC, and granted a final stay of the enforcement of the execution until noon on November 1, 2010.

---

[1] In September, 2010, Victorian Elegance, LLC, sought to open and vacate the stipulated judgment of possession. Mastriani Realty, LLC, objected. The housing court sustained the objection and no appeal was filed.

The plaintiffs arranged to have rental trucks available for November 1 and 2, 2010, for the purpose of removing property from the subject premises; however, Jay Mastriani allegedly arrived in the morning of November 1, 2010, accompanied by a locksmith, claiming that he intended to throw Tarro off the property. Tarro retrieved her copy of the execution from her office to show that any enforcement could not occur until 12 p.m. Jay Mastriani informed Tarro that once the doors were locked that day, she would be allowed to return only on November 15, 2010, and that any possessions left after that date would be his. Jay Mastriani and the locksmith left.

Tarro then also left the subject premises and, on behalf of Victorian Elegance, LLC, filed for bankruptcy. The defendants were notified of the bankruptcy filing at 11:50 a.m. on November 1, 2010. At 1:30 p.m., the defendants arrived at the subject premises with a locksmith and a state marshal. An inventory was made of the property remaining at the subject premises. Tarro called the Windsor police department to prevent the defendants from locking the property. By 3:30 p.m., the defendants had physically removed Tarro from the premises and never allowed her further access to the premises.

The bankruptcy trustee informed the parties that no one should remove any assets from the subject premises while the bankruptcy was pending. Although the defendants, through counsel, informed Tarro that they intended to give her one day of access to remove any claimed assets from the premises, they insisted that they would do so only after she signed a general release of liability.

The bankruptcy action was dismissed on November 23, 2010. On December 2, 2010, Victorian Elegance, LLC, filed a motion asking the housing court "to extend the

time for [it] to claim its property until midnight December 21, 2010." In that motion, Victorian Elegance, LLC, asserted that because of the fourteen day bankruptcy appeal period, any stay previously in effect with respect to the moving of assets at the subject premises would remain in effect through December 6, 2010. It claimed that the defendants were interfering with the plaintiffs' efforts to obtain a lease of new premises and that Tarro would need more than the one day being offered to remove everything. The court denied the motion on December 7, 2010.

After that date, the defendants allegedly continued to deny the plaintiffs access to the subject premises and to frustrate the plaintiffs' efforts to reclaim those possessions left at the subject premises. The defendants eventually established January 11, 2011, as the final date on which they would provide the plaintiffs with access to recover the plaintiffs' assets, albeit continuing to condition any access on the plaintiffs' execution of a general release of liability.[2] On December 22, 2010, Tarro went to the premises and found the defendants removing property to an auction house where it could eventually be sold. The defendants called the Windsor police department and notified the police that if Tarro came on the property again, she should be arrested for trespassing.

The plaintiff commenced the two actions underlying the present appeals on January 27, 2011. The action underlying AC 33922 sought a writ of replevin (replevin action). The action underlying AC 33921 consisted of a

---

[2] According to correspondences between the parties submitted as evidence with the motions for summary judgment, although the defendants took the position that the contents of the premises had been forfeited and were now legally owned by the defendants, they nevertheless posted signs at the premises giving consignors notice that they would return any specific items to the consignor upon the submission of a claim with proper documentation.

four count complaint sounding in statutory conversion, statutory lockout, tortious interference in business relationships and negligence (civil action). The plaintiffs allege that at no time were they provided with an adequate opportunity to remove their possessions from the subject premises. At the heart of both actions is the assertion that the defendants are in wrongful possession of the contents and inventory of Victorian Elegance, LLC, and other personal property of the plaintiffs.

On March 4, 2011, the defendants filed in each action an answer and special defenses, including the special defense that the action is barred by res judicata. They also filed motions for summary judgment in each action. A memorandum of law accompanied the motions for summary judgment, attached to which were copies of the parties' stipulated agreement in the eviction action and the summary process execution. According to the defendants, there were no genuine issues of material fact and they were entitled to judgment as a matter of law because the issues raised by the plaintiffs in the replevin action and the civil action either had been or could have been litigated previously and decided by the housing court in the eviction action, the plaintiffs never appealed from any of the housing court's rulings in the eviction action, and relitigation was barred by the doctrines of res judicata and collateral estoppel. The plaintiffs filed memoranda in opposition to the motions for summary judgment, attaching various exhibits.[3]

[3] Attached as exhibits were the following: an affidavit from Tarro; a July 13, 2010 notice of judgment after stipulation; an October 1, 2010 summary process nonresidential eviction; an October 7, 2010 order by the housing court granting the motion for temporary injunction filed by Victorian Elegance, LLC; an October 7, 2010 receipt for a bond payment to the clerk of the housing court; an October 15, 2010 housing court order denying Victorian Elegance, LLC's motion to quash and granting a stay of execution until November 1, 2010; a November 5, 2010 facsimile from the bankruptcy trustee to counsel for Victorian Elegance, LLC, noting that no one was to remove any property from the premises; a proposed general release of liability; a November 24, 2010 e-mail from the defendants' counsel to the plaintiffs'

According to the plaintiffs, the claims they raised in the replevin action and civil action arose from facts that are separate and distinct from those litigated in the earlier eviction action, and they had no obligation to pursue those claims before the housing court. Thus, the plaintiffs argued, res judicata and collateral estoppel should not apply to bar their actions. Each party filed supplemental memoranda of law.[4] The plaintiffs filed a second supplemental memorandum prior to the court hearing argument at short calendar.

On July 28, 2011, the court issued a memorandum of decision granting the defendants' motion for summary judgment in the replevin action, concluding as follows: "[T]he issues raised in this case were capable of being litigated in the previous action, and were in fact directly addressed by the court at that time. Therefore, this action is barred by res judicata and collateral estoppel. . . . [T]here are no genuine issues of material fact, and the defendants are entitled to judgment as a matter of law . . . ." On August 5, 2011, the court granted the defendants' motion for summary judgment in the civil action and incorporated its decision in the replevin action by reference. The plaintiffs filed the present appeals.

We begin our analysis of the plaintiffs' claims by setting forth the well-settled standard of review applicable to a trial court's decision to grant a motion for

counsel; the July 13, 2010 stipulated agreement of the parties; and a November 1, 2010 notice of bankruptcy filing.

[4] Attached to the defendants' supplemental memorandum were the following exhibits: several e-mails and letters between the defendants' counsel and the plaintiffs' counsel; the November 29, 2010 motion filed by Victorian Elegance, LLC, to extend the time to remove property from the premises, including an inventory list, the opposition filed by Mastriani Realty, LLC, and the housing court's order denying the motion; a draft general release of liability to be signed by the plaintiffs; a certified letter from the defendants' counsel to the plaintiffs' counsel dated December 21, 2010; and a printout from the Judicial Branch website noting that Tarro was arrested for criminal trespass on January 20, 2011.

summary judgment as well as other legal principles that will guide our review. "Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist." (Internal quotation marks omitted.) *Mott* v. *Walmart Stores East, LP*, 139 Conn. App. 618, 624–25, 57 A.3d 391 (2012). "A motion for summary judgment is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact. . . . Because the court's decision on a motion for summary judgment is a legal determination, our review on appeal is plenary. . . . Similarly, [t]he applicability of the doctrines of res judicata or collateral estoppel presents a question of law, over which our review is plenary." (Citations omitted; internal quotation marks omitted.) *Coyle Crete, LLC* v. *Nevins*, 137 Conn. App. 540, 547, 49 A.3d 770 (2012).

"Claim preclusion (res judicata) and issue preclusion (collateral estoppel) have been described as related ideas on a continuum. [C]laim preclusion prevents a

litigant from reasserting a claim that has already been decided on the merits. . . . [I]ssue preclusion . . . prevents a party from relitigating an issue that has been determined in a prior suit. . . . The doctrines of res judicata and collateral estoppel protect the finality of judicial determinations, conserve the time of the court, and prevent wasteful relitigation. . . . [T]he doctrine of . . . claim preclusion . . . [provides that] a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action [between the same parties or those in privity with them] on the same claim. A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose. . . . The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it. . . .

"We recognize that the mere explication of the doctrine of claim preclusion does not resolve all difficulties which may appear at the point of application. . . . [T]he law of estoppel by judgment is well settled, the only difficulty being in its application to the facts. . . . The difficulty has always been in determining what matters are precluded by the former adjudication. . . . In applying the rule of claim preclusion, the critical question is how broad a definition to give to the term same claim or cause of action. The broader the definition, the broader the scope of preclusion." (Citations omitted; internal quotation marks omitted.) *Bruno* v. *Geller*, 136 Conn. App. 707, 720–21, 46 A.3d 974, cert. denied, 306 Conn. 905, 52 A.3d. 732 (2012).

The doctrines of res judicata and collateral estoppel "are judicially created rules of reason that are enforced on public policy grounds . . . [and] whether to apply either doctrine in any particular case should be made based upon a consideration of the doctrine's underlying

policies, namely, the interests of the defendant and of the courts in bringing litigation to a close . . . and the competing interest of the plaintiff in the vindication of a just claim. . . . These [underlying] purposes are generally identified as being (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation. . . . Both collateral estoppel and res judicata are grounded in the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest. . . . At the same time, our Supreme Court has instructed that those doctrines of preclusion should be flexible and must give way when their mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies. . . . Finally, we note that the party asserting a defense of collateral estoppel or res judicata bears the burden of establishing its applicability." (Citations omitted; internal quotation marks omitted.) *Coyle Crete, LLC* v. *Nevins*, supra, 137 Conn. App. 547–48.

Our Supreme Court has cautioned that "the application of either doctrine has dramatic consequences for the party against whom it is applied, and that we should be careful that the effect of the doctrine does not work an injustice." (Internal quotation marks omitted.) *Powell* v. *Infinity Ins. Co.*, 282 Conn. 594, 602, 922 A.2d 1073 (2007). To that end, it has identified factors that a court may consider in deciding whether to recognize an exception to the general policy favoring application of the preclusion doctrines: "(1) whether another public policy interest outweighs the interest of finality served by the preclusion doctrines . . . (2) whether the incentive to litigate a claim or issue differs as between the two forums . . . (3) whether the opportunity to litigate

the claim or issue differs as between the two forums . . . and (4) whether the legislature has evinced an intent that the doctrine should not apply." (Citations omitted; internal quotation marks omitted.) Id., 603. With those principles in mind, we turn to the claims raised by the plaintiffs in the present appeals.

The plaintiffs' sole claim in both AC 33921 and AC 33922 is that the court erred in concluding that their actions were barred by res judicata or collateral estoppel and that, absent a disputed issue of material fact, the defendants were entitled to judgments as a matter of law. The plaintiffs' arguments in support of their claim are, in essence, threefold: (1) the claims raised in the replevin action and the civil action could not be and were not raised before the housing court because its jurisdiction is limited solely to housing matters as that term is defined in General Statutes § 47a-68,[5] (2) the

[5] General Statutes § 47a-68 provides: "As used in this chapter, sections 51-51v and 51-165, subsection (b) of section 51-278 and section 51-348, 'housing matters' means:

"(1) Summary process;

"(2) Appeals from the decisions of a fair rent commission under sections 7-148e and 7-148f;

"(3) Actions and administrative appeals involving discrimination in the sale or rental of residential property;

"(4) All actions regarding forcible entry and detainer;

"(5) Actions under the provisions of title 47a, chapter 4121 or section 47-294;

"(6) All actions involving one or more violations of any state or municipal health, housing, building, electrical, plumbing, fire or sanitation code, including violations occurring in commercial properties, or of any other statute, ordinance or regulation concerned with the health, safety or welfare of any occupant of any housing;

"(7) All actions under sections 47a-56a to 47a-59, inclusive;

"(8) All actions for back rent, damages, return of security deposits and other relief arising out of the parties' relationship as landlord and tenant or owner and occupant;

"(9) All other actions of any nature concerning the health, safety or welfare of any occupant of any place used or intended for use as a place of human habitation if any such action arises from or is related to its occupancy or right of occupancy."

eviction action and the present actions involve separate and distinct legal issues and facts such that the claims raised in the present actions extend beyond any preclusive effect of the summary process action, and (3) no preclusive effect could flow from the execution of ejectment because the execution was never properly returned to the housing court. In response to the plaintiffs' arguments, the defendants maintain to the contrary that the judgment and execution in the eviction action, including the court's consideration and disposition of the parties' postjudgment motions, governed the disposition of the personal property at issue, and, accordingly, res judicata and collateral estoppel bar the plaintiffs' subsequent actions. On the basis of our review, we conclude that the defendants have the better argument and that the court properly granted the defendants' motions for summary judgment because there is no genuine issue of material fact in dispute and the defendants are entitled to judgments as a matter of law.

I

We first address the plaintiffs' argument that the housing court could not have considered the issues raised in the replevin and civil actions or have fashioned a proper remedy, if necessary, to protect the personal property rights of the plaintiffs. Any determination regarding the scope of a court's subject matter jurisdiction or its authority to act presents a question of law over which our review is plenary. See *73-75 Main Avenue, LLC* v. *PP Door Enterprise, Inc.*, 120 Conn. App. 150, 157, 991 A.2d 650 (2010); *State* v. *Perez*, 85 Conn. App. 27, 37, 856 A.2d 452, cert. denied, 271 Conn. 933, 859 A.2d 931 (2004). The plaintiffs contend that the jurisdiction or authority of the court that heard the eviction action was limited solely to housing matters as defined by § 47a-68 such that the court could not have resolved the issues raised by the plaintiff in its subsequent actions. That argument fails, however,

because it is in direct conflict with prior appellate decisions. See *Savage* v. *Aronson*, 214 Conn. 256, 571 A.2d 696 (1990); *73-75 Main Avenue, LLC* v. *PP Door Enterprise, Inc.*, supra, 150.

"In *Savage* v. *Aronson*, [supra, 214 Conn. 256], our Supreme Court . . . explained that, [d]espite the familiar reference to the judicial district courtroom where the judge assigned to hear housing matters presides as the housing court, our statutes create no such special jurisdictional entity. Housing matters are included within the jurisdiction of the Superior Court . . . . The evident purpose of the statutes and rules relating to the divisions of the Superior Court was not to impose any jurisdictional limitation on judges but to achieve greater efficiency in the administration of the judicial department. . . . A judge assigned to the housing division at a particular judicial district is authorized by [General Statutes] § 47a-70 (a), after a case has first been placed on the housing docket, to transfer such matter to the regular docket for a geographical area or judicial district if he determines that such matter is not a housing matter or that such docket is more suitable for the disposition of the case. . . . However, [e]ven if it were clear that [a] complaint fails to allege circumstances constituting a housing matter as defined by . . . § 47a-68, it is plain that such a deficiency did not deprive the trial court of jurisdiction over the action. *A judge of the Superior Court assigned to hear housing matters does not lose his general authority to hear any cause of action pending in that court.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *73-75 Main Avenue, LLC* v. *PP Door Enterprise, Inc.*, supra, 120 Conn. App. 157. Thus, there is no merit to the argument that the housing court in the present case somehow lacked the necessary jurisdiction or authority to adjudicate any and all issues the parties wished to raise vis-à-vis the personal property at issue.

## II

The plaintiffs next argue that the legal issues and factual allegations at issue in the replevin and civil actions are separate and distinct from those that were before the housing court and, thus, res judicata and collateral estoppel do not apply. The plaintiffs also assert that their incentive to litigate before the housing court clearly differed from their incentive to litigate before the Superior Court, invoking one of the factors to be considered in deciding whether an exception to the preclusion doctrines should apply in a particular case. See *Powell* v. *Infinity Ins. Co.*, supra, 282 Conn. 603. For the following reasons, we reject the plaintiffs' arguments.

The primary issues to be litigated in a replevin action are whether the plaintiff has an immediate possessory interest in the personal property that he or she seeks to replevy and whether such property is being wrongfully detained by the defendant. See General Statutes § 52-515. Similarly, the allegations underpinning the civil action are that the defendants acted, either intentionally or negligently, to deprive the plaintiffs of access to the subject premises and to their personal property. Contrary to the plaintiffs' arguments, however, the parties' respective property rights as to the contents of the former shop of Victorian Elegance, LLC, squarely were at issue in the eviction action. The plaintiffs are not entitled to perpetual litigation regarding this matter, and the court properly precluded them from doing so in the subsequent actions.

On the basis of our review of the record, it appears that, by operation of law, the plaintiffs forfeited any right to the immediate possession of personal property remaining at the subject premises, and they could have raised with the housing court any issues they had concerning their efforts to reclaim such property from the defendants. In accordance with the stipulated judgment

of possession, it was incumbent upon the plaintiffs that they remove themselves from the subject premises along with any possessions and personal effects by October 1, 2010, the date the stay of execution of the judgment of possession expired. See General Statutes § 47a-42a (a).[6] Because the plaintiffs had not vacated

[6] General Statutes § 47a-42a is titled "Eviction of tenant and occupants from commercial property. Disposition of unclaimed possessions and personal effects." It provides: "(a) Whenever a judgment is entered against a defendant pursuant to section 47a-26, 47a-26a, 47a-26b or 47a-26d for the possession or occupancy of nonresidential property, such defendant and any other occupant bound by the judgment by subsection (a) of section 47a-26h shall forthwith remove himself or herself, such defendant's or occupant's possessions and all personal effects unless execution has been stayed pursuant to sections 47a-35 to 47a-41, inclusive. If execution has been stayed, such defendant or occupant shall forthwith remove himself or herself, such defendant's or occupant's possessions and all personal effects upon the expiration of any stay of execution. If the defendant or occupant has not so removed himself or herself upon entry of a judgment pursuant to section 47a-26, 47a-26a, 47a-26b or 47a-26d, and upon expiration of any stay of execution, the plaintiff may obtain an execution upon such summary process judgment, and the defendant or other occupant bound by the judgment by subsection (a) of section 47a-26h and the possessions and personal effects of such defendant or other occupant may be removed as provided in this section.

"(b) The state marshal charged with executing upon any such summary process judgment shall, at least twenty-four hours prior to the date and time of the eviction, use reasonable efforts to locate and notify the defendant or occupant of the date and time such eviction is to take place. Such notice shall include service upon each defendant and upon any other person in occupancy, either personally or at the premises, of a true copy of the summary process execution. Such execution shall be on a form prescribed by the Judicial Department, shall be in clear and simple language and in readable format, and shall contain, in addition to other notices given to the defendant or occupant in the execution, a conspicuous notice, in large boldface type, that a person who claims to have a right to continue to occupy the premises should immediately contact an attorney. Such execution shall contain a notice advising the defendant or occupant that if he or she does not remove such defendant's or occupant's possessions and personal effects from the premises by the date and time set for the eviction and thereafter fails to claim such possessions and personal effects from the landlord and pay any removal and storage costs within fifteen days after the date of such eviction, such possessions and personal effects will be forfeited to the landlord.

"(c) The state marshal who served the execution upon the defendant or occupant as provided in subsection (b) of this section shall return to the premises at the date and time such eviction is to take place. If the defendant

the subject premises by that date and had not paid the $2000 necessary to extend the stay of execution further, a valid execution of ejectment was issued. That execution was properly served on the plaintiffs and contained clear notice that if all possessions and personal effects were not removed from the premises by the date and time set for eviction, the defendants had the legal right to inventory and remove any remaining items and, if not collected within fifteen days, title would be forfeited to the defendants. See General Statutes § 47a-42a (b). Victorian Elegance, LLC, unsuccessfully sought to quash the execution with the result that it received a final stay of enforcement to November 1, 2010. It never appealed from any of the housing court's rulings up to that point, including from the denial of the motion to quash, and, therefore, legally was obligated to vacate fully by noon of that date, including removing from the premises all possessions it did not wish to abandon.

The record does not indicate what efforts, if any, the plaintiffs took to physically remove their possessions from the subject premises prior to the November 1, 2010 eviction date; however, what is clear is that the plaintiffs failed to fully remove themselves and their possessions from the property by noon on November

or occupant has not removed himself or herself from the premises, the state marshal shall remove such defendant or occupant. If the defendant or occupant has not removed such defendant's or occupant's possessions and personal effects from the premises, the plaintiff, in the presence of the state marshal, shall prepare an inventory of such possessions and personal effects and provide a copy of such inventory to the state marshal. The plaintiff shall remove and store such possessions or personal effects or shall store the same in the premises. Such removal and storage or storage in the premises shall be at the expense of the defendant. If such possessions and effects are not called for by the defendant or occupant and the expense of such removal and storage or storage in the premises is not paid to the plaintiff within fifteen days after such eviction, the defendant or occupant shall forfeit such possessions and personal effects to the plaintiff and the plaintiff may dispose of them as the plaintiff deems appropriate." General Statutes § 47a-42a.

1, 2010.[7] Even assuming without deciding that Tarro's eleventh hour filing of the bankruptcy action resulted in a further stay of enforcement of the execution; see 11 U.S.C. § 362; any such stay expired at the latest on December 6, 2010, fourteen days after the bankruptcy action was voluntarily dismissed. See Fed. R. Bankr. P. 8002 (a). Thus after the extended eviction date of December 6, 2010, had passed, the plaintiffs could not assert a right to the immediate possession of items they had failed to remove prior to the eviction date, retaining at best a right under § 47a-42a (c) to claim such items within fifteen days, or by December 20, 2010.

In granting summary judgment, the trial court found that the plaintiffs had ample opportunity to raise any and all issues related to the retrieval of their possessions with the housing court, and we can find no error with its finding. Although on appeal, the plaintiffs claim that they could not have raised the issues they now seek to adjudicate before the housing court, the December 2, 2010 motion filed with the housing court shows differently. Victorian Elegance, LLC, filed a motion with the housing court on December 2, 2010, in which it asked the court that it be allowed until midnight on December 21, 2010 to remove the contents of the premises. The motion included allegations that the defendants intended unnecessarily to limit access to the property and that the defendants had contacted a third party landlord in an effort to dissuade that landlord from renting to Victorian Elegance, LLC. The court denied the motion, and no appeal was taken from that ruling. The filing of the motion to extend illustrates that the plaintiffs were well aware that any issues pertaining to

[7] Given the plaintiffs' repeated insistence that more than a single day would have been required to remove all possessions for the subject premises, it is unclear how they ever intended to completely remove everything by noon when the process admittedly had not begun as of the morning of November 1, 2010.

their efforts to retrieve their possessions or to improper actions by the defendants to prevent the same could have been raised to the housing court. No other motions, however, were filed with the housing court challenging any alleged wrongdoing on the part of the defendants vis-à-vis the plaintiffs' efforts to retrieve their abandoned possessions, including the defendants' requirement that the plaintiffs sign a general release before obtaining access to the subject premises.

To the extent that the plaintiffs were unhappy with procedural aspects of the eviction litigation and adverse rulings of the housing court, the plaintiffs' remedy was to seek redress directly from the housing court or to file an appeal. We are mindful that "[t]he decision whether to apply res judicata to matters not actually litigated should be made in light of the policies underlying that doctrine—the competing interests of the defendant and of the courts in bringing litigation to a close and of the plaintiff in the vindication of a just claim." (Internal quotation marks omitted.) *Bruno* v. *Geller*, supra, 136 Conn. App. 722. On the basis of our review of the record and taking into consideration all competing interests involved, we conclude that the court properly determined that the plaintiffs had a full and fair opportunity to litigate their claims before the housing court and thus should be precluded in subsequent litigation from raising matters that could have and should have been raised before the housing court.

The plaintiffs assert in their brief that an exception to the general application of res judicata and collateral estoppel should have been granted in the present case. As previously stated, in considering whether an exception should be granted, we consider such factors as "(1) whether another public policy interest outweighs the interest of finality served by the preclusion doctrines . . . (2) whether the incentive to litigate a claim or issue differs as between the two forums . . . (3)

whether the opportunity to litigate the claim or issue differs as between the two forums . . . and (4) whether the legislature has evinced an intent that the doctrine should not apply." (Citations omitted; internal quotation marks omitted.) *Powell* v. *Infinity Ins. Co.*, supra, 282 Conn. 603. Although the plaintiffs' arguments focus primarily on the third factor, none favors the plaintiffs' position.

We reiterate that in a commercial eviction action brought pursuant to § 47a-42a, the court hearing such an action properly has before it not only those issues necessary for a proper determination of the parties' possessory rights in the subject premises, but also any issue that might arise with respect to possessions and personal effects that remain at the subject premises following execution. See General Statutes § 47a-42a (c). Section 47a-42a contains specific provisions that provide for the forfeiture of an evictee's possessory interests in personal property not removed from the premises prior to eviction and that grant the evictor the right to dispose of any unclaimed property as it deems appropriate. Accordingly, we do not agree with the plaintiffs that the issues they sought to raise in their replevin and civil actions were somehow foreign to the prior proceedings before the housing court or that they lacked a sufficient incentive or opportunity to raise all issues before the housing court concerning the property remaining at or removed from the subject premises and their rights to recover the same. Further, by addressing in § 47a-42a the rights of parties before the housing court relative to any personal property and inventory that might remain on the premises following a commercial eviction, the legislature evinced an intent that issues concerning such property be resolved as part of the eviction action, thereby limiting the need for additional litigation.

## III

Finally, the plaintiffs argue that the summary process execution issued by the housing court in the eviction action on October 1, 2010, was not properly returned to that court within sixty days and, therefore, the execution had lapsed and was void as of December 1, 2010, such that "the defendants were under an obligation to obtain a new execution, which would delineate the statutory rights of the plaintiffs, pursuant to § 47a-42a, to set dates for making claim and abandonment." They further argue that the defendants' failure to obtain a new execution "clearly circumvented the plaintiffs' right to claim [their] assets within a certain designated and specific period of time and failed to provide for the forfeiture of possession of personal effects to the defendants by statute." We find that this argument lacks merit.

The plaintiffs cite to no statute, case law or rule of practice to support their argument that an execution becomes void if not physically returned to court within sixty days. All that is required for a valid execution by statute is that a copy of the execution be served on the summary process defendant and any other parties in occupancy. General Statutes § 47a-42a (b). In the present case, the marshal properly executed the return of service portion of the execution form, a copy of which was attached as exhibit B to the motions for summary judgment, indicating that he served the plaintiffs on October 4, 2010. The defendants were under no obligation to obtain and serve a new execution.

In sum, we conclude that the issues raised in the plaintiffs' replevin action and civil action either were decided in the eviction action or could have been raised and decided therein, and, therefore, the plaintiffs' actions are properly barred by the doctrines of res judicata and collateral estoppel. We find no error with the decision of the trial court that there are no genuine

issues of material fact and that the defendants are entitled to judgments as a matter of law.

The judgments are affirmed.

In this opinion the other judges concurred.