******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JAMES MCLOUGHLIN *v.* LORI MCLOUGHLIN
(AC 36086)

Sheldon, Prescott and West, Js.

*Argued February 5—officially released June 2, 2015*

(Appeal from Superior Court, judicial district of

Hartford, Olear, J. [dissolution judgment]; Ficeto, J.
[motion for order])

*Patrick Tomasiewicz*, for the appellant (plaintiff).

*Emily J. Moskowitz*, for the appellee (defendant).

*Opinion*

PRESCOTT, J. In this marital dissolution action, the plaintiff, James McLoughlin, appeals from the trial court's postdissolution orders (1) denying his motion seeking to resolve the parties' dispute regarding distribution of certain items of personal property and (2) awarding the defendant, Lori McLoughlin, all of the funds in a property tax escrow account, which were refunded following the postdissolution sale of the parties' marital home. The plaintiff claims on appeal that the court improperly denied his motion for order regarding personal property because, in so doing, it effectively distributed the disputed personal property to the defendant, which it lacked the authority to do postjudgment, and because its decision was based in part on an erroneous determination that the parties had failed to timely retain the services of a mediator to resolve their dispute as required by the dissolution judgment. The plaintiff also claims that the court improperly awarded all of the property tax escrow funds to the defendant despite the fact that the parties' separation agreement was silent as to how those funds should be divided following the sale of the marital home. We affirm the judgment of the court.

The record reveals the following facts and procedural history. The parties were divorced on April 12, 2012. The dissolution judgment incorporated by reference a separation agreement executed by the parties. In addition to provisions addressing child support and alimony, the dissolution judgment contained several provisions regarding the distribution of marital assets.

With respect to the marital home, the dissolution judgment provided that the parties would list the home for sale with a specified realtor within two days. The net proceeds from that sale were to be divided equally between the parties. The term "net proceeds" was defined in the judgment as "gross [proceeds] minus real estate commission, conveyance taxes, mortgage, [home equity line of credit] and routine costs of sale and agreed upon repairs . . . ." The plaintiff was obligated to make a good faith effort to vacate the home by May 7, 2012, upon which the defendant was required to ensure that all utilities were billed solely to her. In addition, beginning with the April, 2012 payment, the defendant was obligated "to pay the mortgage . . . upkeep and taxes for the marital residence until the sale and indemnify and hold the [plaintiff] harmless thereon." The judgment expressly provided that the court would retain jurisdiction to settle any future disputes that might arise relative to the sale of the home.

With respect to personal property, the dissolution judgment provided, in its entirety, as follows: "The parties shall divide all items of personal property to their mutual satisfaction. Any items they cannot agree on

shall be the subject of binding mediation with Attorney Leo Diana (or other agreeable mediator) within 30 days. They shall split the cost of mediation 50/50." The court did not retain authority in the dissolution judgment with respect to adjudicating any unresolved issues regarding the distribution of personal property.

Approximately three months later, on July 18, 2012, the plaintiff filed three postjudgment motions for contempt raising a variety of issues, including that the defendant had failed to comply with the personal property provision of the dissolution judgment because she allegedly had failed "to make arrangements concerning [a] bedroom set and [a] dining room set within [thirty] day[s] of the date of [j]udgment . . . ." By way of relief, the plaintiff asked that the court award him the dining room set and the defendant the bedroom set. He did not ask for an order compelling the parties to participate in mediation as referenced in the dissolution judgment.

On August 14, 2012, the court, *Carbonneau, J.*, approved a stipulated agreement of the parties that resolved some of the issues raised in the motions for contempt, but which also provided that unresolved issues regarding, among other things, personal property "shall be assigned for a specific hearing." On September 27, 2012, the plaintiff submitted proposed orders that included a request that "the court enforce the order for binding mediation of personal property and require the [d]efendant to attend within two weeks and pay any costs associated therewith to Attorney Diana or else forfeit the dining room set within two weeks and turn the same over to the [p]laintiff."

The court, *Prestley, J.*, held a hearing on October 9, 2012, at which the parties were to address all outstanding issues raised in the motions for contempt. The majority of the hearing, however, was taken up with resolving problems related to the marketing of the marital home. Toward the end of the hearing, the court attempted to help the parties resolve their ongoing personal property dispute, which remained centered on, but was not limited to, who should get two bedroom sets and a dining room set, including the parties' wedding china. The parties, however, were unable to reach any agreement.[1] In the end, the court instructed the parties to continue to try to settle their dispute on their own before their next court date, and also ordered them to make and exchange lists of any personal property that was important to them and that they wished to keep.

On May 3, 2013, the plaintiff filed a motion titled "motion for order re: personal property, postjudgment." In that motion, the plaintiff recounted that the parties had appeared before the court on October 9, 2012, "seeking an order relative to the distribution of personal property," that the court had ordered the parties to make and exchange lists of items that they wished to

keep, but that no such exchange had ever occurred. By way of relief, the plaintiff asked the court to issue "a final determination as to the *distribution* of personal property." (Emphasis added.) The plaintiff's motion did not contain a request for an order requiring the parties to attend binding mediation or to participate in any other form of alternative dispute resolution. Although the motion was vague regarding the precise relief sought, we construe it as a request by the plaintiff for an order distributing certain remaining items of personalty to him.

Later in May, 2013, the marital home was sold, and the proceeds from that sale were divided in accordance with the dissolution judgment. At the closing, the mortgage company refunded the balance of a property tax escrow account to the closing attorney. The defendant claimed that she was entitled to all of the refund because that refund originated solely from the monthly mortgage payments, including real estate taxes, which she alone had been paying since April, 2012. The plaintiff, however, disagreed, and he refused to authorize the closing attorney to release the funds to the defendant.

On August 8, 2013, the court, *Ficeto, J.*, heard argument on the plaintiff's motion for order regarding personal property as well as other outstanding motions. With respect to the motion for order, the court indicated to the parties that it believed it lacked jurisdiction to issue any postdissolution order directing the distribution of personal property to one party over the other, especially in light of the "very specific delineation in the [dissolution judgment] that says what will happen if they can't agree, and that is that they will be subject to binding mediation . . . ."[2] The plaintiff's counsel acknowledged several times on the record that he understood and agreed that the court could not enter any orders regarding the distribution of personal property postjudgment, but suggested that the court might be able to modify the thirty day time period set forth in the dissolution judgment for entering into binding mediation.[3] The court indicated that it was unsure there was any basis for opening the dissolution judgment at that time, as there appeared to be no allegations of fraud, deceit or mutual mistake.[4] The plaintiff did not ask, nor is it clear from the record that the court considered, whether, instead of opening and modifying the dissolution judgment, the court could order the parties to attend mediation pursuant to its continuing authority to effectuate an existing order, namely, the parties' agreement to attend binding mediation to resolve any personal property disputes, which agreement was incorporated into the dissolution judgment. See *Brody* v. *Brody*, 153 Conn. App. 625, 635–36, 103 A.3d 981 (2014) (motion to open unnecessary for court to exercise continuing jurisdiction to effectuate and vindicate outstanding orders).

During the hearing, the plaintiff's counsel indicated that the parties had not taken advantage of the binding mediation provision within the thirty day time period because the defendant had indicated to the plaintiff that she could not afford to pay for mediation, but that "some sort of relief should be given." The court responded that the proper procedure to obtain relief would have been to "come back to court within the thirty day period," not "just to take her word that, you know, 'I can't afford it,' and walk away." Counsel countered that he had filed a motion for contempt on July 18, 2012, but the court responded that that motion, filed more than three months after the dissolution judgment was rendered, was also outside the "time frame set within the [dissolution judgment]." The court never made any express finding establishing on what date the parties' dispute over personal property actually arose, or whether the thirty days as stated in the separation agreement began to run from the date the judgment was rendered or from the date the parties' dispute began. Ultimately, the court made no rulings regarding the disposition of the disputed personal property, and denied the plaintiff's motion on the ground that it lacked the authority to distribute personal property postdissolution.[5]

At the August 8, 2013 hearing, the defendant also raised the issue of the disputed tax escrow refund. Although the defendant acknowledged that that issue was not the subject of any motion then pending before the court, the plaintiff raised no objection to having argument on the issue. The plaintiff contended that the judgment provided that the net proceeds of the sale were to be split equally and, thus, that equity demanded that the escrow refund also be equally divided between the parties. The defendant argued that she was entitled to all of the funds. According to her, the term "net proceeds" was defined clearly in the agreement and that definition did not include money refunded from escrowed property taxes. She further asserted that after the marriage was dissolved, she was responsible for paying the mortgage and all of the property taxes on the marital home and, thus, all of the money that was refunded from the tax escrow account had been paid by her. The court agreed with the defendant's arguments, stating on the record at one point, "I see no reason why [the defendant] should not be entitled to that money in escrow," and later stating: "I don't see why the funds should not be released. [The dissolution judgment], page 8, clearly delineates who gets what and the responsibilities." The court stopped short of entering an express order awarding the funds to the defendant or directing the plaintiff to allow the funds to be released. The plaintiff's counsel stated that he would check with his client about whether to release the funds, and the defendant's counsel stated that she would file a motion for contempt if the defendant did not receive the money.

On August 20, 2013, the plaintiff filed two motions for reconsideration, one asking the court to reconsider its August 8, 2013 decision "awarding the tax escrow money to the defendant," and the other seeking reconsideration of the court's August 8, 2013 ruling, which he characterized as "awarding items of personal property to the defendant including the dining room set with contents, and bedroom set . . . ." On August 27, 2013, the court denied both motions for reconsideration without comment. This appeal followed.[6]

I

The plaintiff first claims that the court improperly denied his motion for order regarding personal property, in which he asked for a final resolution of the parties' personal property dispute. According to the plaintiff, by denying his motion, the court effectively awarded the disputed personal property to the defendant, which the plaintiff acknowledges the court lacked authority to do postjudgment. The plaintiff further argues that the court's decision to deny the motion was based, at least in part, on an erroneous determination by the court that the parties had failed to retain the services of a mediator to resolve their dispute within thirty days of the dissolution judgment as provided for in the parties' separation agreement. We conclude that the court properly determined that it lacked the authority to grant the relief requested by the plaintiff in his motion and, accordingly, properly denied it.

We begin with the standard of review. The plaintiff's claim implicates the scope of the court's authority to act postdissolution with respect to disputes over items of personal property not distributed as part of the dissolution judgment. "Any determination regarding the scope of a court's . . . authority to act presents a question of law over which our review is plenary." *Tarro* v. *Mastriani Realty, LLC*, 142 Conn. App. 419, 431, 69 A.3d 956, cert. denied, 309 Conn. 912, 69 A. 3d 309 (2013).

It is well settled that "[c]ourts have no inherent power to transfer property from one spouse to another; instead, that power must rest upon an enabling statute. . . . The court's authority to transfer property [in] a dissolution proceeding rests on [General Statutes] § 46b-81. That section provides in relevant part: *At the time of entering a decree* . . . *dissolving a marriage* . . . *the Superior Court may assign to either the husband or wife all or any part of the estate of the other* . . . . Accordingly, the court's authority to divide the personal property of the parties, pursuant to § 46b-81, must be exercised, if at all, at the time that it renders judgment dissolving the marriage." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Rathblott* v. *Rathblott*, 79 Conn. App. 812, 819, 832 A.2d 90 (2003).

We have recognized that some tension exists between § 46b-81 and General Statutes § 52-212a, which provides the trial court with discretionary authority to open judgments. To that end, we have acknowledged that a trial court's authority to correct "an omission in orders transferring personal property in a manner completely consistent with its earlier findings as to its disposition"; *Rome* v. *Album*, 73 Conn. App. 103, 113, 807 A.2d 1017 (2002); would not run afoul of § 46b-81.

This court's decision in *Rathblott* is instructive with regard to our resolution of the plaintiff's first claim. In *Rathblott*, the dissolution judgment contained numerous provisions distributing most of the parties' real and personal property. *Rathblott* v. *Rathblott*, supra, 79 Conn. App. 814. It also contained, however, a provision, similar to the one at issue in the present case, which provided: "The plaintiff and defendant are to attempt to complete the division of their furniture, furnishings and miscellaneous tangibles. If unable to do so, either party may move the court for an articulation." (Internal quotation marks omitted.) Id. The parties made numerous, unsuccessful attempts to divide the remainder of their personal property. Id., 815. Three years after the dissolution judgment was rendered, the defendant filed postjudgment motions that asked the court for a hearing regarding the division of personal property that remained in dispute or, alternatively, to order the parties "to exchange position statements by a date certain, thereby affording the court a basis for rendering a decision regarding a division of the property." Id. Because the parties had moved the disputed property to a storage facility after the sale of the marital home, the defendant also moved the court for an order requiring the plaintiff to pay one half of all moving and storage fees associated with the disputed property. Id., 815–16. On the basis of the defendant's motions, the court ordered the disputed property sold at auction, with all costs associated with the storage and auction of the property to be divided equally between the parties. Id., 816. The plaintiff appealed. Id.

This court reversed the ruling of the trial court, concluding that it had lacked authority to adjudicate the defendant's postjudgment motions regarding personal property. Id. We reasoned: "[Section] 46b-81 authorizes the court to issue orders respecting marital property only at the time of dissolution; it does not authorize postjudgment orders for the division of marital property. Accordingly, in the present case, the court lacked authority to issue a postjudgment order that the marital property, which the court failed to assign to either party at the time of dissolution, be sold at auction." Id., 818.

The court went on to distinguish other cases in which the trial court expressly had retained jurisdiction to ensure that its personal property orders were effectuated by the parties. Id., 820. It concluded: "In the present

case, the court that rendered the judgment of dissolution did not exercise its authority to divide the parties' personal property at the time that it rendered judgment dissolving the marriage. Instead, the court left it to the parties to complete the division . . . . Although the court did state that if the parties were unable to do so, either party could move for an articulation, an articulation is simply an explanation of a previous order or ruling. . . . The court's postjudgment order, therefore, contemplates that a previous ruling on the distribution had been made. There was, however, no order made regarding the distribution of the parties' personal property, other than that the parties were to attempt to divide it. An articulation, therefore, would be of no help to the parties here, even if the parties had attempted to follow that road map by filing a motion for articulation." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id., 820.

As in *Rathblott*, the court in the present case did not distribute the parties' personal property as part of the dissolution judgment; rather, pursuant to the parties' separation agreement, the division of the parties' personal property was left to the parties to accomplish, and, if they were unable to do so, they agreed to attend binding mediation. There was no language in the dissolution judgment retaining the court's authority to effectuate a distribution order or to aid the parties in the event a dispute later arose. Like the parties in *Rathblott*, the parties in the present case were unable to complete the division of their personal property, leaving the parties in legal limbo. Nevertheless, the trial court was without any statutory authority to issue an order resolving the parties' dispute over the distribution of their personal property, as that authority existed only at the time the marriage was dissolved. The division of personal property was clearly contemplated by the parties and the court at the time of dissolution, and was left to the parties, so no oversight or omission can be claimed. Although the plaintiff suggests on appeal that he was not seeking an order distributing personal property, but only an order compelling the parties to mediation, that is not the relief that the plaintiff sought in his motion.

We reject the plaintiff's oft-repeated notion that the court, by denying the plaintiff's motion, awarded items of personal property to the defendant, which we have determined the court lacked authority to do. The court never assigned ownership of any items of personalty to either party; rather, it did nothing more than leave in place whatever status quo then existed as a result of the parties' failure to "divide all items of personal property to their mutual satisfaction," which they had agreed to do in their separation agreement. The court's denial of the motion for order regarding personal property in no way precludes the parties from pursuing other remedies, legal or otherwise, that the parties wish to pursue.[7]

The plaintiff also argues that, in denying his motion for order regarding personal property, the court also improperly determined that the parties had failed to take advantage of procedures they had agreed to pursue in their separation agreement, namely, to retain the services of a mediator within thirty days if they were unable to agree to the distribution of their personal property. The plaintiff argues that the thirty day period referred to in the separation agreement did not run from the date that the dissolution judgment was rendered but from the date a dispute arose between the parties and that he timely raised the issue of the defendant's alleged refusal to participate in mediation in one of his July 18, 2012 motions for contempt, effectively tolling the time period until the issue could be decided by the court.

Neither a construction of the relevant portion of the dissolution judgment nor a determination of whether the court had the authority to order the parties to attend mediation postjudgment—whether within the thirty day period or otherwise—was an issue that was squarely before the court in ruling on the plaintiff's motion for order regarding personal property. We note that the plaintiff himself describes his motion in his appellate brief as a "motion for distribution of assets" and "the motion for distribution." Thus, the plaintiff clearly sought to have the court distribute to one party or the other disputed items of personal property. It was not until after the court suggested that it lacked the authority to grant the relief requested by the plaintiff in his motion that he began to alter his arguments and raised the possibility of the court ordering the parties to attend mediation to resolve their dispute or of his potentially filing a motion to modify the dissolution judgment to extend the time for mediation.

The plaintiff states in his brief that the court "incorrectly concluded that the thirty day period began on the date of the dissolution" and that "[t]he court also erred in not allowing the plaintiff to present evidence to assist the court in determining the parties' intent as to the meaning of the thirty day time period for mediation." Our review of the hearing transcript, however, reveals that the court never made any express finding whether the thirty day period set forth in the dissolution judgment was intended to run from the date of the dissolution judgment or from the date when a dispute over personal property arose. Further, the plaintiff never requested an opportunity to present evidence on the meaning of that provision.[8] Even if we were inclined to agree with the plaintiff's assertion that the thirty day period did not begin to run until the parties' dispute over the personalty commenced, the court made no finding as to that date, nor can we determine it from the record before us. Accordingly, the record would be wholly inadequate for us to evaluate whether the court correctly determined that the plaintiff's

motion for contempt failed to raise in a timely manner the issue of the parties' failure to attend mediation.[9] Nevertheless, because we conclude that the court lacked authority to render any final resolution of the parties' personal property dispute, which was the only relief sought in the motion for order regarding personal property, we need not address any of the tangential issues pertaining to the parties' postjudgment efforts, or lack thereof, to resolve their dispute over personal property themselves, whether through mediation or other means.

II

The plaintiff also claims that the court improperly awarded to the defendant all of the property tax escrow refund. The plaintiff argues that, despite the agreement being silent as to how property tax escrow money was to be divided upon the sale of the home, the court incorrectly determined that the dissolution judgment clearly delineated that the defendant was entitled to the refunded money. The plaintiff also argues that the tax escrow refund should be considered a part of the net proceeds of the sale of the home and that the agreement provided that the net proceeds were to be divided equally between the parties. We are not persuaded by either argument.

"It is well established that a separation agreement that has been incorporated into a dissolution decree and its resulting judgment must be regarded as a contract and construed in accordance with the general principles governing contracts. . . . When construing a contract, we seek to determine the intent of the parties from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact. . . . When the language is clear and unambiguous, however, the contract must be given effect according to its terms, and the determination of the parties' intent is a question of law. . . .

"The threshold determination in the construction of a separation agreement, therefore, is whether, examining the relevant provision in light of the context of the situation, the provision at issue is clear and unambiguous, which is a question of law over which our review is plenary. . . . Contract language is unambiguous when it has a definite and precise meaning . . . concerning which there is no reasonable basis for a differ-

ence of opinion . . . . The proper inquiry focuses on whether the agreement on its face is reasonably susceptible of more than one interpretation. . . . It must be noted, however, that the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Isham* v. *Isham*, 292 Conn. 170, 180–81, 972 A.2d 228 (2009).

In the present case, the dissolution judgment incorporating the separation agreement contained two provisions that are relevant to our consideration of the plaintiff's claim. First, with respect to any proceeds generated by the sale of the marital home, the dissolution judgment provided in relevant part: "The net proceeds (defined as gross minus real estate commission, conveyance taxes, mortgage, [home equity line of credit] and routine costs of sale and agreed upon repairs) shall be divided equally (50/50) between the parties at the time of the closing . . . ." Second, with respect to payment of the mortgage and property taxes on the marital home postdissolution, the dissolution judgment provided in relevant part: "The [defendant] shall be responsible to pay the mortgage (commencing with the April 1, 2012 payment), utilities . . . upkeep and taxes for the marital residence until the sale and indemnify and hold the [plaintiff] harmless thereon."

The plaintiff does not claim, nor do we conclude on the basis of our review, that either of these provisions contains unclear or ambiguous language. The agreement unequivocally states that the parties are to share equally only in the "net proceeds" of the sale of the marital home. The term "net proceeds" is clearly defined in the provision, and, contrary to the bald assertion made by the plaintiff on appeal, the definition does not include any language that reasonably may be construed as encompassing the escrowed real estate taxes that were refunded at the closing of the sale.

Instead, as the court correctly determined, the separation agreement clearly and unambiguously placed full responsibility on the defendant to pay the mortgage and all property taxes for the marital home beginning in April, 2012. The plaintiff was not responsible for making any direct contributions to the mortgage or real estate taxes postdissolution and was to be held harmless with respect to them. It is not disputed that a portion of each of the monthly mortgage payments was placed in escrow for the purposes of paying property taxes. Thus, when the property was sold in May, 2013, more than a year after the dissolution judgment was rendered, all of the funds in the property tax escrow account consisted solely of monies that were paid by the defendant postdissolution.

The plaintiff argued at the hearing before the trial court, and repeats on appeal, that his postdissolution

payment to the defendant of alimony and child support should be viewed as, in effect, contributing to the payment of the mortgage and taxes postjudgment. The plaintiff provides no legal support for that proposition. Our review of the separation agreement reveals that the plaintiff's support obligations were in no way connected to or based upon the defendant's current or future mortgage obligations. For example, there was no provision in the separation agreement providing for an adjustment to alimony payments following the sale of the marital home. Accordingly, we reject any suggestion that the funds in the escrow account should be viewed as a joint marital asset subject to equitable distribution. Those funds consisted exclusively of the defendant's money. Accordingly, the court properly determined that the entirety of any escrow refund belonged to the defendant. The plaintiff's arguments to the contrary are without merit.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] At one point during the hearing, the court attempted to aid the parties in resolving their dispute by simply drawing names from a cup, but that solution, as well as several others, eventually was abandoned.

[2] At one point, the court questioned whether Judge Prestley had the authority to act in the manner that she did at the October 9, 2012 hearing. Because the court's actions at that hearing are not before us for review in this appeal, we express no opinion regarding their propriety.

[3] The plaintiff's counsel indicated to the court at one point that he *could* file a motion for modification and also seemed to suggest that the court had the authority to render such relief sua sponte. Counsel never indicated that he previously had requested an order requiring the parties to attend mediation, nor are we convinced that his statements during the hearing reasonably can be construed as an oral motion for such an order.

[4] Courts in this state are statutorily barred from opening a civil judgment or decree unless a motion to open is filed within four months of the judgment, "unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction . . . ." General Statutes § 52-212a. Nevertheless, "[i]t is a well-established general rule that even a judgment rendered by the court upon the consent of the parties, which is in the nature of a contract to which the court has given its approval, can subsequently be opened [after the four month limitation] . . . if it is shown that the stipulation, and hence the judgment, was obtained by fraud, in the actual absence of consent, or because of mutual mistake." (Emphasis omitted.) *Kim* v. *Magnotta*, 249 Conn. 94, 106, 733 A.2d 809 (1999).

[5] Although the court and the parties repeatedly used the term "jurisdiction" during the proceedings, we note that the distribution of personal property postdissolution does not implicate the court's subject matter jurisdiction but, rather, its statutory authority. See *Rathblott* v. *Rathblott*, 79 Conn. App. 812, 818–19, 832 A.2d 90 (2003). If the court truly lacked subject matter jurisdiction, it would have been required to dismiss, rather than deny, the plaintiff's motion. See *State* v. *Tabone*, 301 Conn. 708, 715, 23 A.3d 689 (2011).

[6] On August 20, 2013, the defendant also filed a motion for contempt claiming that the plaintiff's refusal to allow the closing attorney to release the escrow tax refund to the defendant was in violation of the parties' separation agreement. That motion made no mention of an August 8, 2013 ruling entitling the defendant to all of the escrow funds. Later, prior to the start of a November 18, 2013 hearing, the defendant filed a motion asking the court for an order directing the closing attorney to release the escrow funds to her. According to the defendant, the closing attorney refused to release the funds to the defendant without any specific order from the court. The court signed the order as presented to it on November 18, 2013, directing the closing attorney to release the funds to the defendant. The court indicated on the record that it believed the November 18, 2013 order was an order effectuating its August 8, 2013 decision.

In his appellate brief, the plaintiff asserts that both parties mistakenly had believed that the court issued an order on August 8, 2013, awarding the escrow funds to the defendant, but that no order actually issued until the November 18, 2013 hearing. If the plaintiff were correct, that assertion would be fatal to his claim on appeal regarding the escrow funds because his appeal was taken from the court's August 8, 2013 rulings and was filed on September 20, 2013, before the November 18, 2013 order was issued. The plaintiff did not file an amended appeal in accordance with Practice Book § 61-9 from the November 18, 2013 order, and, therefore, if correct, there would have been no appealable final judgment with respect to the escrow fund at the time the plaintiff filed this appeal. Nevertheless, we conclude on the basis of our review of the August 8, 2013 hearing that the court rendered an appealable judgment at that time when it concluded that the defendant was entitled to all of the tax escrow funds. Although, as previously indicated, the court issued no express order with respect to the disputed funds at the August 8, 2013 hearing, we believe that the issue was properly before the court and that the statements made by the court on the record during the hearing amounted to a ruling on the escrow issue, and the November 18, 2013 decision was merely an effectuation of that earlier order.

[7] In *Rathblott*, this court noted that its holding reversing the trial court's ruling in that case "should not be construed as one that forecloses the parties from initiating an independent proceeding seeking a determination regarding their undivided personal property, and the costs associated with moving and storing that property. See, e.g., *Richards* v. *Richards*, [67 Conn. App. 381, 786 A.2d 1247 (2001)]." *Rathblott* v. *Rathblott*, supra, 79 Conn. App. 822 n.5.

[8] If a separation agreement contains definitive language, a court ordinarily will not look beyond the four corners of the agreement and will determine the intent of the parties by affording the language used its common, natural, and ordinary meaning. See *Doyle* v. *Doyle*, 150 Conn. App. 312, 321–22, 90 A.3d 1024 (2014). Only if the language is ambiguous and susceptible to more than one meaning will a court allow extrinsic evidence of the parties' intent. Id., 322.

[9] Interestingly, the plaintiff recites in his July 18, 2012 motion for contempt the obligation to mediate within thirty days regarding any ongoing dispute regarding the distribution of personal items and complained that arrangements had not been made concerning the bedroom and dining room sets within thirty days of the judgment. That suggests that he construed the thirty day period for attending mediation as having commenced when the dissolution judgment was rendered, in direct contradiction to the position he takes now on appeal.